# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1664

PEDRO MATA-GUERRERO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

————————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A042-909-636

————————

ARGUED SEPTEMBER 22, 2010—DECIDED NOVEMBER 24, 2010

————————

Before MANION, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Petitioner Pedro Mata-Guerrero is a native of Mexico and has been a legal permanent resident of the United States since 1991. The Department of Homeland Security seeks to remove Mata-Guerrero from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who has been convicted of an aggravated felony after his admission to the United

States. Mata-Guerrero did not dispute the facts underlying the government's petition for removal, but he sought adjustment of his status and a waiver of inadmissibility under the former 8 U.S.C. § 1182(c) (a "212(c) waiver" in shorthand), on the basis that he had been convicted of only one crime of "moral turpitude." The government would have discretion not to remove him if he was convicted of only one crime of moral turpitude, but a second conviction for a crime of moral turpitude would bar him from the prospect of discretionary relief from removal.

The government contends that Mata-Guerrero has been convicted of a second crime of moral turpitude that bars him from seeking a 212(c) waiver. The issue is whether his conviction for failing to register as a sex offender as required by Wisconsin law was a crime of moral turpitude. Concluding that Mata-Guerrero's failure to register was a crime of moral turpitude, the Board of Immigration Appeals affirmed the immigration judge in denying Mata-Guerrero's application for a 212(c) waiver. However, the Board's conclusion was based entirely on an earlier Board decision that analyzed whether a failure to register was a crime of moral turpitude using the "categorical approach." In the meantime, the Attorney General has abandoned that approach. Because the Attorney General's determination of the appropriate methodology is controlling, and because the Board did not use that methodology in Mata-Guerrero's case, we grant the petition for review and remand to the Board for further proceedings under the proper methodology.

Before the repeal of section 212(c) in 1996, most deportable aliens who had accrued seven years of lawful

permanent residence in the United States could request discretionary relief from deportation by arguing that the equities weighed in favor of allowing them to remain in the United States. Even an alien convicted of an aggravated felony (like Mata-Guerrero) was eligible for discretionary relief if he served a prison term of less than five years. Section 212(c) relief was unavailable, however, for an alien who had committed two or more crimes of moral turpitude. See 8 U.S.C. § 1182(c) (1994). Then, in 1996, the Illegal Immigration Reform and Immigrant Responsibility Act repealed section 212(c) relief and replaced it with a procedure called "cancellation of removal." Cancellation of removal is not available to an alien convicted of an aggravated felony. See 8 U.S.C. § 1229b(a); see also 8 U.S.C. § 1182(h) (provision of the Antiterrorism and Effective Death Penalty Act rendering aliens convicted of an aggravated felony, regardless of the length of sentence, ineligible for discretionary relief from deportation under former section 212(c)). Despite the statutory change, the Supreme Court has held that petitioners who pled guilty to their underlying offenses before the 1996 repeal of section 212(c) are still eligible to seek waiver under its terms. See *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 326 (2001).

Mata-Guerrero pled guilty to first degree sexual assault of a child in violation of Wisconsin Statute § 948.02(1) in 1993. All agree that this crime was sufficient to justify his removal and that it was a crime of moral turpitude. Under the repealed section 212(c) and *St. Cyr*, the issue is whether Mata-Guerrero has also been convicted of a second crime of moral turpitude. Wisconsin has instituted

a sex offender registry. Because of his 1993 conviction, Mata-Guerrero was required to register as a sex offender with the Wisconsin Department of Corrections and to provide certain information as set forth by statute. See Wis. Stat. § 301.45. Mata-Guerrero failed to register, and on October 19, 2005 he pled guilty to a misdemeanor for having failed to register as a sex offender under Wisconsin Statute § 301.45(2)(a).[1] His sentence was two days of time served. Whether he is now even legally eligible for a discretionary section 212(c) waiver turns on whether this second conviction, like his first, was a crime of moral turpitude. If it was, no waiver is available.

Mata-Guerrero has argued before the Board of Immigration Appeals and on judicial review that his conviction for failing to register was not a crime of moral turpitude because the provision of Wisconsin law under which he pled guilty, section 301.45(2)(a), is a strict liability, regulatory offense that does not require proof of criminal intent, such as proof that Mata-Guerrero failed to register willfully or knowingly. He has argued that the record does not show that he had any criminal intent when he failed to register, much less that his conduct rose to the level of a crime of moral turpitude. A case from the Ninth Circuit supported Mata-Guerrero's position. See *Plasencia-Ayala v.*

---

[1] Wisconsin Statute § 301.45(2)(a) requires the department to maintain the sex offender registry, and it sets forth the information the registry must contain. A separate provision of the Wisconsin Statute makes it a crime to fail *knowingly* to provide the information required, see Wis. Stat. § 301.45(6)(a), but Mata-Guerrero was not convicted under that section.

*Mukasey*, 516 F.3d 738 (9th Cir. 2008).[2] The Board refused to give *Plasencia-Ayala* controlling weight in a matter arising in this circuit. Instead, the Board looked to one of its earlier decisions that found a "willful" failure to register as a sex offender under California law to be a crime of moral turpitude. See *Matter of Tobar-Lobo*, 24 I. & N. Dec. 143 (2007). Relying on that case, the Board concluded that Mata-Guerrero's conviction for failure to register was a crime of moral turpitude and therefore that Mata-Guerrero was ineligible for a section 212(c) waiver, even though Wisconsin Statute § 301.45(2)(a) contains no element of intent or even knowledge.

Because the classification of a crime as one of moral turpitude is a question of law, we have jurisdiction. See 8 U.S.C. § 1252(a)(2)(D). Our review of an agency's determination of whether a particular crime should be classified as a crime of moral turpitude ordinarily is deferential under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984) (where Congress has left an administrative agency with discretion to resolve a statutory ambiguity, judicial review is deferential); accord, *Immigration and Naturalization Service v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (applying *Chevron* principles to statutory interpretation by the Attorney General and the Board of Immigration Appeals); *Ali v.*

---

[2] *Plasencia-Ayala* was overruled by *Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009), for its failure to give *Chevron* deference to the Board's interpretation of whether failure to register was a crime involving moral turpitude in *Matter of Tobar-Lobo*, 24 I. & N. Dec. 143 (2007).

*Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008) (applying *Chevron* deference to Board of Immigration Appeals decision regarding whether gun trafficking was a crime of moral turpitude for purposes of a waiver of inadmissibility).

The government urges us to defer to the Board's decision in this case. *Chevron* deference, however, assumes that an agency has taken a careful look at the general legal issue and has adopted a reasonably consistent approach to it. See *Chen v. Holder*, 607 F.3d 511, 514 (7th Cir. 2010) (Board's decision was not precedential and therefore "did not count" for *Chevron* purposes, which required a formal resolution of the question by rulemaking or adjudication); *Ghani v. Holder*, 557 F.3d 836, 840 (7th Cir. 2009) (*Chevron* deference applied to the crime of moral turpitude question so long as it was clear that the Board engaged in substantive analysis and was not affirming without providing reasoning of its own).

In Mata-Guerrero's case, that simply has not happened. The Board relied on *Matter of Tobar-Lobo* without any independent analysis, and only in the absence of Seventh Circuit authority on the issue.[3] How can we defer to the

---

[3] In his opinion on the matter, the immigration judge stated:

This Court believes itself to be bound by the decision of the Board of Immigration Appeals absent a contrary decision by a superior court. Therefore, the Court does not believe that it is at liberty to second guess or review or reach a decision which is contrary to the Board's decision. The respondent

(continued...)

Board's decision in Mata-Guerrero's case when the Board did not actually adjudicate the issue and expressed that it would defer to this Court on the same question? Mata-Guerrero would be the victim of a procedural Catch-22.

Nor can we give deference to *Tobar-Lobo*. In *Tobar-Lobo*, the Board examined the California registry statute under which Tobar-Lobo had been convicted by using the "categorical approach" used for other recidivist statutes that require classification of prior crimes. See generally *Taylor v. United States*, 495 U.S. 575, 600-02 (1990), and its progeny. In other words, the Board looked not to whether the "actual conduct constitute[d] a crime involving moral turpitude, but rather, whether the full range of conduct encompassed by the statute constitute[d] a crime of moral turpitude." 24 I. & N. Dec. at 144, quoting *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163 (9th Cir. 2006). Equating failing to register with the crimes of statutory rape, child abuse, and spousal abuse, the Board in *Tobar-Lobo* found that failure to register as a sex offender under the California statute, even as a result of forgetful-

---

[3]  (...continued)

> has presented his argument and has preserved it for appeal and that argument might conceivably be found persuasive in the Seventh Circuit. However, it is not persuasive in this Court. Therefore, the Court concludes that the respondent is not able to establish eligibility for adjustment of status and therefore that relief will be denied.

This reasoning was adopted and affirmed by the Board.

ness, was a crime of moral turpitude. *Id*. at 145-47. Even if we could overlook the clear distinction between that case and this one (the California statute considered by the Board in *Tobar-Lobo* required willfulness, while the Wisconsin statute under which Mata-Guerrero was convicted required no intent whatsoever), we cannot overlook that the Board *in Tobar-Lobo* applied the categorical approach. That methodology is no longer valid in determining whether a particular offense arises to a "crime of moral turpitude" under immigration law.

In *Ali v. Mukasey*, we held that, "when deciding how to classify convictions under criteria that go beyond the criminal charge—such as . . . whether the crime is one of 'moral turpitude,' the agency has the discretion to consider evidence beyond the charging papers and judgment of conviction." *Ali*, 521 F.3d at 743. *Ali* was decided based on deference to the Board's decision in *Matter of Babaisakov*, 24 I. & N. Dec. 306 (2007), in which the Board abandoned the categorical approach and decided that additional evidence could be taken by the immigration judge when necessary. That approach was recently reaffirmed by the Attorney General in *Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 701-03 (2008) (discussing *Ali* and *Babaisakov* with approval). Pursuant to 8 U.S.C. § 1103(a)(1), the Attorney General's determination on this question of law is controlling, and there is no longer any question regarding which methodology should be used to determine whether a crime is or is not a crime of moral turpitude. We defer to the Attorney General's decision in *Silva-Trevino*. Because the Board in Mata-Guerrero's case did not use

this methodology or rely on a case that did, we grant Mata-Guerrero's petition for review and remand to the Board.

In *Silva-Trevino*, the Attorney General established a three-step inquiry to be used to decide whether particular criminal offenses amount to crimes of moral turpitude. First, the immigration judge should focus on the statute's actual scope and application and ask whether, at the time of the alien's removal proceeding, any actual (not hypothetical) case existed in which the statute was applied to conduct that did not involve moral turpitude, *including the alien's own conviction*. See 24 I. & N. Dec. at 697, 704, citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). If that evaluation of a "realistic probability" does not resolve the question, the judge should proceed to a "modified categorical" approach, examining the record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or a guilty plea transcript. See *id*. at 699, 704. Then, where those records of conviction also fail to shed light on the question, the Attorney General instructs that the immigration judge should consider any evidence beyond those records "if doing so is necessary and appropriate to ensure proper application of the Act's moral turpitude provisions." *Id*. at 699. The Attorney General explained:

> Allowing for inquiry beyond the record of conviction would result in more accurate determinations of who falls within the scope of the statute, and would better accord with the statute's demands for individualized adjudications. It would also produce more uniform

results nationwide, because the answer to whether an alien's prior conviction was for a crime involving moral turpitude would be less likely to turn on the drafting of a particular criminal statute or a jurisdiction's record-keeping practices.

*Id*. at 702. The Attorney General found that to do otherwise and to impose evidentiary limitations would be in tension with the goals of the immigration act and would also unfairly apply immigration penalties to aliens whose individual crimes did not, in actuality, involve moral turpitude. See *id*. at 700. In other words, the ultimate purpose of this analysis is to look at the actual crime committed by the individual alien.

Mata-Guerrero's case must be remanded so that this individualized inquiry can be made. The Board of Immigration Appeals defines "crimes of moral turpitude" as "conduct that shocks the public conscience as being 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owned between persons or to society in general.'" *Garcia-Meza v. Mukasey,* 516 F.3d 535, 536 (7th Cir. 2008), quoting *In re Solon*, 24 I. & N. Dec. 239, 240 (2007). The Attorney General has instructed: "A finding of moral turpitude under the Act requires that a perpetrator have committed the reprehensible act with some form of scienter." *Silva-Trevino*, 24 I. & N. Dec. at 706. Nothing in the record before this court suggests that the requisite intent was present in Mata-Guerrero's crime. Wisconsin Statute § 301.45(2)(a) does not have an element of intent, and Mata-Guerreo's record of conviction under that provision of Wisconsin law does not

disclose that he had any criminal intent when he failed to comply with its requirements. Remand is appropriate so further inquiry may be made. We therefore grant Mata-Guerrero's petition for review and remand to the Board so it may determine whether his conviction under Wisconsin Statute § 301.45(2)(a) was a crime of moral turpitude using the individualized inquiry required by the Attorney General in *Silva-Trevino*. If it was not, then Mata-Guerrero is entitled to have the government exercise its sound discretion based on his individual circumstances in deciding whether to grant him a section 212(c) waiver.

PETITION GRANTED.