# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2253

JOSE CONCEPCION MARIN-RODRIGUEZ,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A098 725 619

ARGUED JANUARY 17, 2013—DECIDED MARCH 6, 2013

Before MANION and TINDER, *Circuit Judges,* and LEE,
*District Judge.**

MANION, *Circuit Judge.* Jose Concepcion Marin-Rodri-
guez, a citizen of Mexico, sought cancellation of removal
because his removal would cause hardship for his

---

* Honorable John Z. Lee, of the Northern District of Illinois,
sitting by designation.

children, who are United States citizens. Ultimately, an Immigration Judge concluded that Rodriguez was not eligible for cancellation of removal because he had a prior conviction for using a fraudulent Social Security card to obtain and maintain employment that amounted to a crime involving moral turpitude. The Board of Immigration Appeals affirmed, and Rodriguez now petitions this court for review. Because the agency did not err in classifying Rodriguez's conviction as one for a crime involving moral turpitude, we deny his petition.

## I.  Factual Background

Rodriguez illegally entered the United States in 1988. Due to a misdemeanor DUI conviction in 2005, he came to the attention of the Department of Homeland Security ("DHS"), which initiated the process of removing him. During this process, the DHS discovered that he had been using a social security card and number not assigned to him. Rodriguez was charged with and pleaded guilty to using a fraudulent Social Security card to obtain and maintain employment within the United States in violation of 18 U.S.C. § 1546(a). Rodriguez's guilty plea included the following stipulation:

> The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:
>
> Between January 1999 and May 2005, the defendant, a citizen of Mexico who is not a citizen or national of the United States, used a social security card, knowing that card was not assigned to him and had been

unlawfully obtained, to secure and maintain employment . . . in Wichita, Sedgwiek County, Kansas. Such a document, when authentic, is evidence that a person is authorized to be employed in the United States. The defendant used the fraudulent card for that purpose.

At a subsequent hearing before an Immigration Judge ("IJ"), Rodriguez conceded removability, but sought cancellation of removal. The IJ's court was located in Chicago, Illinois, while Rodriguez appeared via tele-video from Kansas City, Missouri. Pursuant to the applicable regulations, *see* 8 C.F.R. § 1003.47(c)-(d), the IJ ordered Rodriguez to submit a set of fingerprints needed to determine his identity and whether he had any disqualifying criminal convictions. Fifteen months later, at his next hearing, Rodriguez still had not complied with the IJ's order. Thus, another IJ (who was located in Kansas City, Missouri) deemed Rodriguez's application for cancellation of removal abandoned for his "failure to fulfill the requirements of his biometrics and biographic information check." The IJ then ordered Rodriguez removed. Rodriguez appealed to the Board of Immigration Appeals ("Board"). While his appeal was pending, Rodriguez submitted a set of fingerprints and moved to remand. The Board deemed his motion untimely and dismissed his appeal. But then Rodriguez moved for reconsideration, and the Board granted this motion and remanded to the Immigration Court.

Before the IJ could rule, however, the DHS asked the Board to reconsider because Rodriguez had already been

removed to Mexico. Concluding that it lacked jurisdiction, the Board granted the DHS' motion and withdrew its remand order. Rodriguez petitioned this court for relief. We held that the Board erred in ruling that it lacked jurisdiction, and we granted Rodriguez's petition and remanded to the Board. *See Marin-Rodriguez v. Holder*, 612 F.3d 591, 594-95 (7th Cir. 2010). We observed, however, that our remand might provide little solace for Rodriguez because his section 1546(a) conviction could nevertheless frustrate his efforts to avoid removal. *Id.* The Board then remanded Rodriguez's immigration proceedings to the Immigration Court. A new IJ, also located in Kansas City, Missouri, issued a written decision ruling that Rodriguez was ineligible for cancellation of removal because his section 1546(a) conviction was for a crime involving moral turpitude. On appeal, the Board adopted and affirmed the IJ's decision. Rodriguez now petitions this court for review.[1]

## II. Discussion

On appeal, Rodriguez does not dispute that he would be ineligible for cancellation of removal if he was in fact convicted of a crime involving moral turpitude. *See* 8 U.S.C. § 1229b(b)(1)(C). But Rodriguez contends that

---

[1] Because Rodriguez and the conclusion of his immigration proceedings were located in Missouri, the DHS observes in its brief that the Eighth Circuit, rather than our circuit, is the correct venue for this case. However, the agency expressly waives any challenge to venue.

the agency erred in concluding that his conviction for using a fraudulent Social Security card to obtain and maintain employment in violation of section 1546(a) constitutes a crime involving moral turpitude. "Whether an alien's conviction is properly classified as a crime of moral turpitude is a question of law, so we may review it." *Lagunas-Salgado v. Holder*, 584 F.3d 707, 710 (7th Cir. 2009) (citing 8 U.S.C. § 1252(a)(2)(D)). While legal questions are usually reviewed *de novo*, "[o]ur review of an agency's determination of whether a particular crime should be classified as a crime of moral turpitude ordinarily is deferential under *Chevron* . . . ." *Mata-Guerrero v. Holder*, 627 F.3d 256, 259 (7th Cir. 2010). But we do not extend *Chevron* deference to non-precedential Board decisions that do not rely on binding board precedent. *Arobelidze v. Holder*, 653 F.3d 513, 520 (7th Cir. 2011). Rather, such Board decisions are entitled only to *Skidmore* deference. *Id.* Therefore, because the Board opinion from which Rodriguez appeals is non-precedential, its interpretation of the immigration statutes and regulations is entitled to our respect—but only to the extent that interpretation has the "power to persuade." *Id.*; *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

The immigration statutes use but do not define the phrase "crime involving moral turpitude." *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I); 8 U.S.C. § 1227(a)(2)(A)(i)(I). And until 2008, the "absence of an authoritative administrative methodology for resolving moral turpitude inquiries ha[d] resulted in different approaches across the country." *Silva-Trevino*, 24 I. & N. Dec. 687, 693 (AG

2008). Thus, the agency would apply the law of the circuit in which an alien's case arose. *Id.* Like most circuits, our decisions generally applied the categorical and modified categorical framework adopted by *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), for applying recidivist enhancements in federal criminal prosecutions. *See Ali v. Mukasey*, 521 F.3d 737, 741, 742 n.† (7th Cir. 2008); *Hashish v. Gonzales*, 442 F.3d 572, 575-76 (7th Cir. 2006) (collecting cases). Under that approach, the decisionmaker would "determine whether a given crime necessarily involves moral turpitude by examining only the elements of the statute under which the alien was convicted and the record of conviction, not the circumstances surrounding the particular transgression." *Padilla v. Gonzales*, 397 F.3d 1016, 1019 (7th Cir. 2005) (internal quotation marks omitted).

Then, in *Ali v. Mukasey*, we relied upon 8 U.S.C. § 1229a(c)(3)(B) and *Babaisakov*, 24 I. & N. Dec. 306 (BIA 2007), to hold that "when deciding how to classify convictions under criteria that go beyond the criminal charge—such as . . . whether the crime is one of 'moral turpitude', the agency has the discretion to consider evidence beyond the charging papers and judgment of conviction." 521 F.3d at 743. Subsequently, in 2008, the Attorney General relied upon *Ali* in adopting a hierarchical or sequential three-step inquiry to be used by the entire agency in deciding which crimes are morally turpitudinous. *See Silva-Trevino*, 24 I. & N. Dec. at 696-704. The first and second steps of this inquiry generally coincide with the categorical and modified categorical ap-

proaches, respectively. *Id.* However, the third step permits the IJ to consider any evidence beyond the statute and record of conviction, as in *Ali. Id.* This third step "is properly applied only where the record of conviction does not itself resolve the issue . . . ." *Ahortalejo-Guzman*, 25 I. & N. Dec. 465, 468 (BIA 2011). We have determined that *Silva-Trevino*'s entire framework is entitled to *Chevron* deference.[2] *See Mata-Guerrero*, 627 F.3d at 260.[3]

---

[2]  In his brief, Rodriguez questions whether the third step of the *Silva-Trevino* framework permits as broad a consideration of additional evidence as permitted under the standard articulated in *Ali*. Regardless, as discussed below, the agency resolved Rodriguez's case at the second step, and he was given an opportunity to present any additional evidence he wished. Rodriguez also expresses doubts about the continued vitality of pre-*Silva-Trevino* decisions that held that convictions under section 1546 for conduct involving deceit or misuse of official documents were for crimes involving moral turpitude. We need not address this quandary because, as we discuss below, Rodriguez's petition can be disposed of based on our decision in *Lagunas-Salgado,* 584 F.3d at 712, which post-dates *Silva-Trevino*.

[3]  A number of circuits have rejected the third step of the *Silva-Trevino* framework. *See Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012); *Fajardo v. Att'y Gen.*, 659 F.3d 1303, 1310 (11th Cir. 2011); *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 482 (3d Cir. 2009); *see also Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010) ("We are bound by our circuit's precedent, and to the extent *Silva-Trevino* is inconsistent, we adhere to

(continued...)

Here, the agency applied the *Silva-Trevino* framework and concluded, at the first step, that section 1546(a) realistically encompasses some conduct that is not morally turpitudinous. At the second step, however, the agency found that Rodriguez's record of conviction establishes that his crime involved moral turpitude. That decision was correct.

Crimes entailing an intent to deceive or defraud are unquestionably morally turpitudinous. *See Jordan v. De George*, 341 U.S. 223, 232 (1951) ("[T]he decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude."); *Abdelqadar v. Gonzales*, 413 F.3d 668, 671 (7th Cir. 2005) ("Crimes entailing deceit or false statement are within the core of the common-law understanding of 'moral turpitude.' "); *Padilla*, 397 F.3d at 1020-21 (collecting cases). And in *Lagunas-Salgado v. Holder*, we held that selling fraudulent immigration documents to illegal aliens is morally turpitudinous because it "involves inherently deceptive conduct." 584 F.3d at 712. Similarly, other circuits have recognized that the use of false immigration documents involves the kind of deceit or fraud that renders a crime morally turpitudinous. *See, e.g.*, *Lateef v. Dep't of Homeland Sec.*, 592 F.3d 926, 928, 931 (8th Cir. 2010) (holding alien's conviction for

---

[3] (...continued) circuit law."). However, as discussed below, the agency resolved Rodriguez's case at the second step (which is generally consistent with the modified categorical approach).

"using an unlawfully obtained social security number" was for a crime involving moral turpitude); *Omagah v. Ashcroft*, 288 F.3d 254, 261-62 (5th Cir. 2002) (affirming Board ruling that "conspiracy to possess [illegal immigration documents] with intent to use does rise to the level of moral turpitude . . . .").

Here, Rodriguez's record of conviction reveals that, as part of his guilty plea, he admitted that he "used a social security card, knowing that card was not assigned to him and had been unlawfully obtained, to secure and maintain employment . . . ." He also admitted that he was aware that an authentic Social Security card could be used as evidence that a person is authorized to work in the United States. By knowingly presenting a false Social Security card to an employer to obtain and maintain unauthorized employment, Rodriguez not only violated the law but also engaged in deceptive conduct.

The deceptive nature of Rodriguez's conduct is even more explicit than that of the alien's conduct in *Lagunas-Salgado*. Here, Rodriguez's use of a false Social Security card was directly deceptive: he presented the card to an employer with the intent to deceive that employer into thinking that he was legally employable. In contrast, the alien in *Lagunas-Salgado* was not directly deceiving anyone, but only selling false immigration documents to aliens who could then use them for deceptive purposes. *See Lagunas-Salgado*, 584 F.3d at 712 ("That the recipients themselves were not deceived does not change the fact that Lagunas-Salgado was

selling fraudulent Social Security cards and alien reg-istration cards and placing them out into the world."). Lagunas-Salgado's indirectly deceptive conduct was "inherently deceptive" because of the risk that the aliens purchasing the cards would use them deceptively—exactly the sort of deceptive use, as it happens, in which Rodriguez engaged. Consequently, Rodriguez's directly deceptive use of a false Social Security card to obtain and maintain unauthorized employment *a fortiori* also "involves inherently deceptive conduct."[4] And, as we already observed, crimes involving deceit are "within the core of the common-law understanding of 'moral turpi-tude.'" *Abdelqadar*, 413 F.3d at 671. Therefore, we con-clude that the agency did not err in holding that Rodri-guez's conviction was for a crime involving moral turpi-tude.

Rodriguez's arguments to the contrary are not persua-sive. Certainly, as Rodriguez points out, Board prece-

---

[4] Because Rodriguez's conduct was inherently deceptive, *Lagunas-Salgado* disposes of Rodriguez's contention that it is possible that he did not actually deceive his employer when he presented his false Social Security card. His use of a false Social Security card to obtain and maintain unauthorized employment evidences an intent to deceive his employer regardless of whether the employer was actually deceived. *Cf. Omagah*, 288 F.3d at 261. In fact, Rodriguez carried the burden of establishing his eligibility for cancellation, *see* 8 C.F.R. § 1240.8(d), yet he failed to offer any evidence that his employer was not deceived or that he did not intend to deceive his employer when he used the false Social Security card.

dent establishes that a conviction for merely possessing an altered immigration document does not constitute a crime involving moral turpitude because an alien "might not have had the intent to use the altered immigration document in his possession unlawfully." *Serna*, 20 I. & N. Dec. 579, 586 (BIA 1992). But, as with the alien in *Lagunas-Salgado*, Rodriguez "was not convicted of merely possessing a false document," but rather of *using* that false document in a way that involved deception or the intent to deceive. 584 F.3d at 712. Similarly, Rodriguez's arguments that his crime was not base, vile, fraudulent, or *malum in se* are without merit because, as we have explained, the agency did not err in finding that his conduct involved deception, and generally "a crime involving dishonesty or false statement is considered to be one involving moral turpitude." *Padilla*, 397 F.3d at 1020 (quoting *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) (internal quotation marks omitted)); *see also Lagunas-Salgado*, 584 F.3d at 712; *Lateef*, 592 F.3d at 928, 931; *Omagah*, 288 F.3d at 261-62.

Rodriguez also argues that his conviction for using a false Social Security card cannot be for a crime involving moral turpitude unless the underlying conduct was also illegal. Rodriguez contends that he only used the false Social Security card to obtain and maintain employment, which is not illegal.[5] Rodriguez's position is not

---

[5] Rodriguez is correct that federal law does not impose criminal penalties on illegal aliens merely because they work in

(continued...)

tenable in light of the rule that crimes involving deception are morally turpitudinous. Furthermore, the Board decisions cited by Rodriguez—*Granados*, 16 I. & N. Dec. 726 (BIA 1979) (holding that possessing a concealed weapon is not a crime involving moral turpitude), and *S-*, 6 I. & N. Dec. 769 (BIA 1955) (holding that possessing instruments of house-breaking is not a crime involving moral turpitude)—are distinguishable because they involved convictions for merely *possessing* unlawful items. As we explained above, *possession* is different from *use*. And, unlike Rodriguez's use of a false Social Security card, merely possessing weapons or burglary implements does not involve deception.

   However, Rodriguez also relies on *Beltran-Tirado v. INS*, 213 F.3d 1179, 1184 (9th Cir. 2000), wherein the Ninth Circuit looked to the legislative history of 42 U.S.C. § 408(d)(1)[6] to rule that the "use of a false Social Security number to further otherwise legal behavior is not a crime of 'moral turpitude' . . . ." The Ninth Circuit relied, specifically, upon a congressional conference committee report stating that the exemption

---

[5]  (...continued)

the United States. *See Arizona v. United States*, 132 S. Ct. 2492, 2495 (2012). But that federal law imposes civil penalties on such conduct when detected, and criminal as well as civil penalties on employers who hire illegal aliens, demonstrates that such conduct is far from innocent or praiseworthy—even if ubiquitous.

[6]  Subsequently recodified at 42 U.S.C. § 408(e).

from prosecution provided by section 408(d)(1) only applies "to those individuals who use a false social security number to engage in otherwise lawful conduct."[7] H.R. Conf. Rep. No. 101-964, at 948 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2374, 2653. The report also states that the "Conferees believe that individuals who are provided exemption from prosecution under this proposal should not be considered to have exhibited moral turpitude with respect to the exempted acts for purposes of determinations made by the Immigration and Naturalization Service." *Id.*

However, the Fifth, Sixth, and Eighth circuits have all declined to follow *Beltran-Tirado*. *See Guardado-Garcia*, 615 F.3d at 902-03; *Serrato-Soto v. Holder*, 570 F.3d 686, 692 (6th Cir. 2009); *Hyder v. Keisler*, 506 F.3d 388, 393 (5th Cir. 2007). We now join those circuits in declining to follow a decision that "appears to have expanded a narrow exemption beyond what Congress intended." *Hyder*, 506 F.3d at 393. As Rodriguez concedes, section 408(d)(1) and its attendant legislative history do not apply to him. And "[t]he mere fact that Congress chose to exempt a certain class of aliens from prosecution for certain acts does not necessarily mean that those acts do not involve moral turpitude in other contexts." *Id.* Furthermore, to adopt the reasoning in *Beltran-Tirado*

---

[7] Rodriguez cites this report in his brief; but only for the proposition that a crime cannot be morally turpitudinous if it is not *malum in se*—an argument that we have addressed above and need not belabor here.

would be to depart, at least partly, from our precedent establishing that crimes of deceit and fraud involve moral turpitude. *See, e.g., Abdelqadar*, 413 F.3d at 671; *Padilla*, 397 F.3d at 1020-21. We agree with the Fifth and Sixth circuits that such a departure from our precedent would not be appropriate. *See Serrato-Soto*, 570 F.3d at 692 ("And in declining to follow *Beltran-Tirado*, we do not disturb established Sixth Circuit precedent finding crimes of fraud or dishonesty within the class of crimes involving moral turpitude."); *Hyder*, 506 F.3d at 393.

### III. Conclusion

Because the agency correctly determined that Jose Concepcion Marin-Rodriguez's prior conviction for using a fraudulent Social Security card to obtain and maintain employment was for a crime involving moral turpitude, we DENY the petition for review.