HAMILTON, Circuit Judge.
Petitioner Maria Eudofilia Arias came to this country without authorization in 2000. She has raised three children here. Her longtime employer calls her an “excellent employee.” She now faces removal from the United States after the Board of Immigration Appeals characterized her sole criminal conviction — falsely using a social security number to work' — as a “crime involving moral turpitude.” This characterization bars Arias from seeking discretionary cancellation of removal under 8 U.S.C. § 1229b(b)(l). Arias has petitioned for review of the removal order.
We grant the petition and remand the case to the Board for further proceedings. Arias was convicted under a statute making it a federal crime to misrepresent a social security number to be one’s own “for any ... purpose.” 42 U.S.C. § 408(a)(7)(B) (emphasis added). Many violations of that statute would amount to crimes involving moral turpitude. For both legal and pragmatic reasons, though, we doubt that every violation of the statute necessarily qualifies as a crime involving moral turpitude.
We remand this case on two narrower grounds. First, the Board misapplied the framework for identifying crimes involving moral turpitude that it was bound to apply at the time of its decision. See Matter of Silva-Trevino (Silva-Trevino I), 24 I. & N. Dec. 687 (Att’y Gen. 2008) (establishing framework). Then, after the Board’s decision but before Arias’s petition for our review became ripe for decision, the Attorney General vacated the Silva-Trevino I framework in its entirety. See Matter of Silva-Trevino (Silva-Trevino II), 26 I. & N. Dec. 550, 554 (Att’y Gen. 2015). Given the Board’s legal error and the current vacuum of authoritative guidance on how the Board should determine whether a crime involves moral turpitude, we remand to the Board to reconsider Arias’s case.-
In Part I, we recount the factual and procedural background of this case. In Part II, we examine the difficulty in treating violations of § 408(a)(7)(B) categorically as crimes involving moral turpitude. In Part III, we explain the reasons for our remand' based on the Board’s legal error and the current uncertainty about how the Board should decide whether a conviction is for a crime involving moral turpitude.
I. Factual and Legal Background
Since coming to the United States from Ecuador without authorization in 2000, Arias has worked for the Grabill Cabinet Company in Grabill, Indiana. The company called Arias an “excellent employee” in a *825 letter Arias submitted to the immigration court in support of her application for cancellation of removal. To work for Grabill Cabinet, Arias provided a false social security number. She has presented evidence that she has filed an income tax return for every year she has been in the United States through 2012.
Arias has also raised a family in the United States. Arias and her husband have been married since 1989. Their three children have grown up in the United States. The two younger children, five and fourteen years old, are United States citizens. Her oldest child, twenty-six years old, was born in Ecuador but has received relief from removal through the Deferred Action for Childhood Arrivals program.
In 2010, Arias was charged in federal court with falsely using a social security number to work for Grabill Cabinet in violation of 42 U.S.C. § 408(a)(7)(B). Section 408(a)(7)(B) makes it a crime to misrepresent a social security number to be one’s own to obtain a benefit or “for any. other purpose.” Arias pled guilty and was sentenced to just about the lightest felony sentence one is likely to find in modern federal practice: one year of probation and a $100 special assessment. After Arias completed her probation successfully, she received employment authorization ahd Grabill Cabinet rehired her. In the letter from the company that Arias submitted to the immigration court, Grabill Cabinet said that it “did not have any problems” welcoming her back to her old job. Her indictment charged Arias with an “intent to deceive Grabill,” although it is evident that Grabill itself did not have a problem with Arias’s deception and does not view itself as a victim. There is no indication in the record that Arias has broken any state or federal laws other than her unauthorized immigration into this country and false use of a social security number to work.
In 2010, Arias received a notice to appear for removal proceedings. She admitted removability but applied for cancellation of removal under 8 U.S.C. § 1229b(b)(l). The Attorney General may cancel the removal of unauthorized immigrants who have been in the United States for at least ten years and who can show that their removal would cause “exceptional and extremely unusual hardship” to their children, spouses, or parents who are United States citizens, among other requirements. Id.
Such discretionary cancellation is barred, however, if the immigrant has been convicted of a “crime involving moral turpitude.” 8 U.S.C. §§ 1182(a)(2)(A)(i)(I), 1229b(b)(l)(C). “Moral turpitude” is not defined in the statute. The Board and federal courts have labored for generations to provide a workable definition. See generally Jordan v. De George, 341 U.S. 223, 227-29, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (holding that conspiracy to evade payment of liquor tax was crime involving moral turpitude, and noting that all varieties of fraud are treated likewise); id. at 232-45, 71 S.Ct. 703 (Jackson, J., dissenting) (“moral turpitude” is too vague to support deportation).
The immigration judge held that Arias’s crime of conviction was a crime involving moral turpitude. The judge relied on two of this circuit’s cases: Marin-Rodriguez v. Holder, 710 F.3d 734 (7th Cir. 2013), and Miranda-Murillo v. Holder, 502 Fed.Appx. 610 (7th Cir. 2013), a non-prece-dential order. A one-member panel of the Board affirmed. Th'e Board said it was using the categorical approach, the first step in the now-vacated Silva-Trevino I framework, to determine that a violation of § 408(a)(7)(B) necessarily involves moral turpitude. See Silva-Trevino I, 24 I. & N. Dec. at 689-90. Citing this court’s opinion in Marin-Rodriguez, 710 F.3d at 738, the *826 Board held: “An intent to deceive for the purpose of wrongfully obtaining a benefit is an element of the offense, and therefore the offense is categorically a crime involving moral turpitude.”
Arias petitioned for judicial review of the Board’s decision denying cancellation of removal. Under 8 U.S.C. § 1252(a)(2)(D), we have jurisdiction to review the legal question whether a crime involves moral turpitude. Lagunas-Salgado v. Holder, 584 F.3d 707, 710 (7th Cir. 2009). Arias argues that her crime of conviction does not categorically involve moral turpitude because, while the statute requires deception, it does not always require fraud, which necessarily involves detriment to the person or entity defrauded. Arias presented these arguments to the Board sufficiently to allow our review, and, in any case, the Board’s discussion of deceit in the context of moral turpitude opens up that issue for our review. See Arobelidze v. Holder, 653 F.3d 513, 517 (7th Cir. 2011); Juarez v. Holder, 599 F.3d 560, 564 n.3 (7th Cir. 2010).
II. Crimes Involving Moral Turpitude
The issue is whether a violation of 42 U.S.C. § 408(a)(7)(B) is a crime involving moral turpitude. We have not decided the issue in a precedential opinion, and other circuits are split. The Fifth and Eighth Circuits have said yes (including opinions regarding the closely related subpara-graph, § 408(a)(7)(A)). Guardado-Garcia v. Holder, 615 F.3d 900, 901-02 (8th Cir. 2010); Lateef v. Department of Homeland Security, 592 F.3d 926, 929 (8th Cir. 2010) (§ 408(a)(7)(A)); Hyder v. Keisler, 506 F.3d 388, 392 (5th Cir. 2007) (§ 408(a)(7)(A)). The Ninth Circuit has said no. Beltran-Tirado v. I.N.S., 213 F.3d 1179, 1184 (9th Cir. 2000).
The Board has defined a crime involving moral turpitude as “conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.” In re Solon, 24 I. & N. Dec. 239, 240 (BIA 2007) (citation and internal quotation marks omitted). We have adopted definitions substantively in line with the Board’s. See, e.g., Sanchez v. Holder, 757 F.3d 712, 715 (7th Cir. 2014); see also Padilla v. Gonzales, 397 F.3d 1016, 1019 (7th Cir. 2005) (“We have recently stated that a crime of moral turpitude is one that is deliberately committed and ‘serious,’ either in terms of the magnitude of the loss that it causes or the indignation that it arouses in the law-abiding public.”), overruled on other grounds by Ali v. Mukasey, 521 F.3d 737, 743 (7th Cir. 2008); see generally Julia Ann Simon-Kerr, Moral Turpitude, 2012 Utah L. Rev. 1001, 1044-68 (2012) (recounting history of moral turpitude as a concept in immigration law).
Taking the Board’s definition at face value, it is difficult to see how a violation of § 408(a)(7)(B) is categorically a crime involving moral turpitude. In fact, the Board reached its decision in this case by misstating the provisions of the statute. The Board wrote incorrectly that § 408(a)(7)(B) has as a necessary element an “intent to deceive for the purpose of wrongfully obtaining a benefit.” That is not correct. The statute criminalizes falsely representing a social security number to be one’s own for purposes of obtaining various social security benefits but also “for any other purpose.”
It is not difficult to imagine some purposes for which falsely using a social security number would not be “inherently base, vile, or depraved.” For example, hospitals and other health care providers often ask for patients’ social security numbers. Would it be “inherently base, vile, or depraved” for a person without a social security number to take a child who has fallen *827 ill to a hospital and to give a false social security number to obtain treatment for her sick child, knowing she is ready, willing, and able .to pay for the care? Not unless the terms “base, vile, or depraved” have ceased to have any real meaning.
Courts and the Board do not always apply the above definition according to its literal terms. They instead often use two heuristics to decide what is “inherently base, vile, or depraved” and what is not. First, crimes that are malum in se (inherently wrong), as opposed to malum prohi-bitum (wrong only because prohibited), are often said to involve moral turpitude. See, e.g., Padilla, 397 F.3d at 1020; In re Fualaau, 21 I. & N. Dec. 475, 477 (BIA 1996) (“Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.”); Matter of Flores, 17 I. & N. Dec. 225, 227 (BIA 1980). Second, courts and the Board have focused on the presence of a “vicious motive” or an “evil intent” to determine whether a crime involves moral turpitude. See, e.g., Fernandez-Ruiz v. Gonzales, 468 F.3d 1159, 1165-66 (9th Cir. 2006); Partyka v. Attorney General, 417 F.3d 408, 413 (3d Cir. 2005); Flores, 17 I. & N. Dec. at 227 (“The test to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.”); see generally Simon-Kerr, supra, 2012 Utah L. Rev. at 1059-68 (recounting history of scienter, test for moral turpitude).
The broad “any other purpose” term in § 408(a)(7)(B) makes it difficult to see how a violation of the statute could categorically involve evil intent or be malum in se. There- need not be any evil intent in the hypothetical about a parent using a false social security number to secure medical care for a sick child, unless deception without more, no matter how admirable the goal, involves evil intent (i.e., moral turpitude). Along those same lines, it seems like giving a false social security number “for any ... purpose” should not be categorically malum in se or inherently wrong. The Ninth Circuit has held that a violation of § 408(a)(7)(B) is not malum in se. Bel-tran-Tirado, 213 F.3d at 1183-84 (reasoning that Congress could not have intended violations of § 408(a)(7)(B) to be crimes involving moral turpitude because of legislative history indicating that unauthorized immigrants exempt from prosecution under § 408 under an amnesty • program should not be considered to have exhibited moral turpitude). But see Marin-Rodriguez, 710 F.3d at 740-41 (rejecting Bel-traris-Tirado’s legislative history argument).
We acknowledge that the Board’s holding that Arias’s violation of § 408(a)(7)(B) categorically is a crime involving moral turpitude does have a basis in law. Despite the confusion about how to determine what moral turpitude is, there is a consensus that fraud is close to the core of moral turpitude. In Jordan v. De George, the Supreme Court rejected an argument that the moral turpitude standard was unconstitutionally vague in the case of an immigrant facing deportation for conspiring to defraud the United States of liquor taxes. The Court reasoned: “Whatever else the phrase ‘crime involving moral turpitude’ may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude.” 341 U.S. at 232, 71 S.Ct. 703; see also Simon-Kerr, supra, 2012 Utah L. Rev. at 1008 (arguing that legal concept of moral turpitude developed from eighteenth- and nineteenth-century “honor norms” and therefore includes “oath-breaking, fraud, and their extensions” as part of its “core of *828 settled meaning”) (internal quotation marks omitted).
We and other' courts have sometimes used broader language, writing that any crime involving the larger concept of “deception,” in contrast to the narrower concept of fraud, involves moral turpitude. See, e.g., Marin-Rodriguez, 710 F.3d at 738 (“Crimes entailing an intent to deceive or defraud are unquestionably morally tur-pitudinous.”); Guardado-Garcia, 615 F.3d at 902 (“Crimes involving the intent to deceive or defraud are generally considered to involve moral turpitude.”) (citation and internal quotation marks omitted); Hyder, 506 F.3d at 391 (“We have repeatedly emphasized that crimes whose essential elements involve fraud or deception tend to be CIMTs.”); Abdelqadar v. Gonzales, 413 F.3d 668, 671 (7th Cir. 2005) (“Crimes entailing deceit or false statement are within the core of the common-law understanding of ‘moral turpitude.’ ”). In Padilla, in deciding that obstruction of justice was a crime involving moral turpitude, we wrote: “Crimes that do not involve fraud, but that include dishonesty or lying as an essential element also tend to involve moral turpitude.” 397 F.3d at 1020 (citation and internal quotation marks omitted).
But note the qualifier, “tend to.” Despite the broad language, cases finding crimes of moral turpitude based on deception rely on other aggravating factors, especially actual or intended harm to others. See Abdelqadar, 413 F.3d at 670 (buying food stamps for cash from proper recipients); Padilla, 397 F.3d at 1017-18 (obstruction of justice by giving false information to police officer); see also Guardado-Garcia, 615 F.3d at 902 (using false social security number to gain access to secure area of major airport).
There is also a basis in Board precedents, which are also entitled to our deference, for the idea that a crime involving moral turpitude requires more than simple dishonesty. In tort law, liability for fraud requires loss to the person defrauded. See Restatement (Second) of Torts § 531. Some Board precedents seem to follow this distinction. For example, in Matter of De-lagadillo, the Board held that the violation of a Mexican anti-fraud statute was not categorically a crime involving moral turpitude. 15 I. & N. Dec. 395, 396-97 (BIA 1975). The Board reasoned that the statute as written did not “require the taking of another’s property.” Id. at 396. Because the statute “could therefore punish any act of deception used in retrieving one’s own property” it did not categorically involve moral turpitude. Id. The Board then looked to the specific facts of the conviction at issue. The Board held that the immigrant’s actions — fabrication of a property transfer “in an unsuccessful attempt to reduce his wife’s potential settlement in a divorce action” — was not “so base or vile as to be deemed morally turpitudinous under United States standards.” Id. at 397. Similarly, in Matter of B-M-, the Board held that making a false statement to an immigration inspector was not a crime involving moral turpitude because “the offense may have consisted only of a false and not a fraudulent statement.” 6 I. & N. Dec. 806, 808 (BIA 1955). But see Matter of P-, 6 I. & N. Dec. 795, 798 (BIA 1955) (holding that conviction under statute containing “inherent intent to deceive or mislead” was crime involving moral turpitude).
Arias’s case brings into focus the troubling results that would follow from a rule that every crime that involves any element of deception involves moral turpitude. As of 2014, unauthorized immigrants made up about five percent of the United States labor force. Jens Manuel Krogstad & Jeffrey S. Passel, 5 Facts About Illegal Immigration in the U.S., Pew Research Center (November 19, 2015), available at *829 http://www.pewresearch.org/fact-tank/ 2015/11/19/5-facts-about-illegal-immigration-in-the-u-s. Has every one of those millions of workers who gives a social security number to her employer committed a crime involving moral turpitude? Those persons are removable because they are not in the United States lawfully. The issue for Arias and all the others is whether they are barred from even discretionary relief because they have provided false social security numbers so that they can work and pay taxes.
It seems inconsistent with the terms “base, vile, or depraved” to hold that an unauthorized immigrant who uses a false social security number so that she can hold a job, pay taxes, and support her family would be guilty of a crime involving moral turpitude, while an unauthorized immigrant who is paid solely in cash under the table and does not pay any taxes would not necessarily be guilty of a crime involving moral turpitude. A rule that all crimes that involve any element of deception categorically involve moral turpitude would produce results at odds with the accepted definition of moral turpitude as conduct that is “inherently base, vile, or depraved.” At the same time, there is significant precedent indicating that deceptive conduct is morally turpitudinous. In the end, though, we do not need to try to resolve this conflict definitively in this case. As we explain next, we remand because of the unsettled state of the law regarding how the Board must go about determining which crimes involve moral turpitude.
III. The Changing Legal Framework
Given the difficulty that courts and the Board have had in defining the boundaries of moral turpitude, perhaps we should not be surprised to find great uncertainty regarding how the Board should decide whether an immigrant has been convicted of a crime involving moral turpitude. In between the Board’s order and the briefing in Arias’s petition for our review, the Attorney General vacated the order that had set the approach the Board used to determine that Arias’s crime involved moral turpitude. No replacement framework has yet emerged. The current uncertainty about method and an error the Board made in applying the old framework warrant a remand to the Board to reconsider Arias’s conviction under a new framework the Board adopts or the Attorney General mandates. See Mata-Guerrero v. Holder, 627 F.3d 256, 257 (7th Cir. 2010) (remanding to the Board a decision that a crime involved moral turpitude because Board had used an approach that had since been replaced by Silvar-Trevino I framework).
In 2008, the Attorney General established a three-step process for determining whether a crime involved moral turpitude. See Silva-Trevino I, 24 I. & N. Dec. 687 (Att’y Gen. 2008). Step one of Silvar-Trevino I used the categorical approach, looking to the elements of the statute of conviction to determine whether there is a “realistic probability” that the statute could be applied to conduct that does not involve moral turpitude. Where step one was inconclusive, step two looked beyond the statutory elements to records of conviction, such as charging documents, jury instructions, and guilty plea agreements and transcripts to see if the defendant’s crime involved moral turpitude. Where that was also inconclusive, step three allowed an immigration judge or the Board to consider additional evidence regarding the defendant’s actual conduct.
We approved the Silva-Trevino I approach. Sanchez v. Holder, 757 F.3d 712, 718 (7th Cir. 2014); Mata-Guerrero, 627 F.3d at 260; see also Bobadilla v. Holder, 679 F.3d 1052, 1057 (8th Cir. 2012). Some' other circuits, however, held that allowing an immigration judge to look beyond the record of conviction violated the unambigu *830 ous language of the statute. See, e.g., Silva-Trevino v. Holder, 742 F.3d 197, 198 (5th Cir. 2014); Olivas-Motta v. Holder, 746 F.3d 907, 916 (9th Cir. 2013); Prudencio v. Holder, 669 F.3d 472, 484 (4th Cir. 2012). In light of these other circuits’ decisions, the Attorney General vacated Silvctr-Trevino I and directed the Board to address in appropriate cases how “adjudicators are to determine whether a particular criminal offense is a crime involving moral turpitude” under the Immigration and Nationality Act. Silva-Trevino II, 26 I. & N. Dec. 550, 553 (Att’y Gen. 2015). The Board has not yet acted on that instruction, leaving a vacuum of authority regarding how it should determine whether a crime involves moral turpitude.
To add to the confusion, the Board did not correctly apply the Silvctr-Trevino I framework in its opinion holding that Arias’s violation of § 408(a)(7)(B) involved moral turpitude. The Board selectively quoted the statute and then stated: “An intent to deceive for the purpose of wrongfully obtaining a benefit is an element of the offense, and therefore the offense is categorically a crime involving moral turpitude.” As noted above, § 408(a)(7)(B) criminalizes false use of a social security number not only to obtain a benefit but also “for any other purpose.” The Board rephrased the statute to fit Arias’s particular circumstances, which indicates that the Board looked beyond the statute to determine that Arias’s crime of conviction involved moral turpitude. This was permissible under Silva-Trevino I, but only if examination of the statute proved inconclusive.' Silva-Trevino I, 24 I. & N. Dec. at 690.[1]
The Board failed to analyze whether the statute was inconclusive before looking beyond the elements of the statute. This was an error under Silva-Trevino I. It is unclear whether it would be an error now. Since Silva-Trevino II, it is uncertain whether and under what circumstances the Board will be permitted to look beyond the elements of the statute. In addition, in light of Silvctr-Trevinó II, our decision today does not amount to overruling our earlier opinion in Marin-Rodriguez. 710 F.3d 734. That decision was grounded in the now-vacated framework of Silva-Trevino I. Because the Silvctr-Trevino I framework has since been vacated and the Attorney General has directed the Board to determine a new framework for judging which crimes involve moral turpitude, we REMAND to the Board to consider Arias’s case under an appropriate legal framework for judging moral turpitude.

. Although the Board’s interpretation of whether a crime involves moral turpitude for the purposes of the Immigration and Nationality Act is often entitled to Chevron deference, Ali v. Mukasey, 521 F.3d 737, 739 (7th Cir. 2008), Chevron deference does not protect clear legal errors such as the Board's misapplication of the Silva-Trevino I framework or misstatement regarding the contents of 42 U.S.C. § 408(a)(7)(B).