**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FRANCISCO FLORES-MOLINA,

    Petitioner,

v.

JEFF SESSIONS,[*] United States Attorney General,

    Respondent.

No. 16-9516

_____

**Petition for Review from an Order of the**
**Board of Immigration Appeals**
_____

Shawn D. Meade, MyRights Immigration Law Firm, Denver, Colorado, for Petitioner.

Rebecca Hoffberg Phillips, Attorney, Office of Immigration Litigation (Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Brianne Whelan Cohen, Senior Litigation Counsel, Office of Immigration Litigation, and Laura M.L. Maroldy, Trial Attorney, with her on the briefs), United States Department of Justice, Washington, D.C., for Respondent.
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

---

[*] Jeff Sessions is substituted for Loretta E. Lynch as United States Attorney General pursuant to Fed. R. App. P. 43(c)(2).

Francisco Flores-Molina is an undocumented alien subject to removal from the United States. An immigration judge determined he is ineligible for cancellation of removal because he has been convicted of a "crime involving moral turpitude." The Board of Immigration Appeals agreed and dismissed Mr. Flores-Molina's appeal. Mr. Flores-Molina then filed a petition in this court, arguing the Board of Immigration Appeals erred in finding that his crime of conviction, Denver Municipal Code § 38-40, is a crime involving moral turpitude. We agree. Exercising jurisdiction under 8 U.S.C. § 1252(a), we grant the petition and remand for further proceedings.

## I.  BACKGROUND

Mr. Flores-Molina is a citizen of Mexico who came to the United States illegally and has remained here continuously since 1998. In March 2000, he pled guilty to violating Denver Municipal Code ("DMC") § 38-40, which prohibits giving false information to a city official during an investigation. In November 2011, following Mr. Flores-Molina's conviction of a Colorado driving-related offense, the federal government issued a Notice to Appear in which it charged Mr. Flores-Molina with removability as "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). In the Notice to Appear, the government alleged, among other things, that Mr. Flores-Molina (1) is not a citizen or national of the United States, (2) is a citizen and national of Mexico, and (3) was not admitted or paroled in the United States after inspection by an immigration officer.

2

Mr. Flores-Molina admitted to these allegations in a written response submitted to the immigration court. He also conceded that he was removable as charged. The immigration judge held a hearing on August 22, 2013, and found Mr. Flores-Molina removable based on his admissions and concession.

At the same hearing, Mr. Flores-Molina submitted an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b), which allows the Attorney General to cancel the removal of a noncitizen when four conditions are satisfied. *See* 8 U.S.C. § 1229b(b)(1)(A)–(D). One of these conditions is that the applicant must not have been convicted of a "crime involving moral turpitude." *See id.* § 1229b(b)(1)(C); *id.* § 1182(a)(2)(A)(i); *id.* § 1227(a)(2)(A)(i). The government moved to set aside Mr. Flores-Molina's application, arguing that his DMC § 38-40 conviction is a conviction of a crime involving moral turpitude ("CIMT") and that he is therefore barred from seeking relief under § 1229b(b).[1]

On December 10, 2013, the immigration judge held a status eligibility conference to determine whether Mr. Flores-Molina was barred from seeking cancellation of removal. After hearing arguments from both sides, the immigration judge found him

---

[1] DMC § 38-40 provides:

It shall be unlawful for any person knowingly and willfully to give false information to an officer or employee of the city when such officer or employee is acting in their official capacity, concerning the identity of any person participating in, connected with, or responsible for, or concerning the manner of the commission of, any act, when, as part of their official duties or employment, such officer or employee is investigating:
> (1) The legality of such act; or
> (2) The identity of the person participating in, connected with, or responsible for the commission of such act.

statutorily barred because of his DMC § 38-40 conviction, concluding DMC § 38-40 is categorically a CIMT. Specifically, the judge found that, because DMC § 38-40 requires "knowingly and willfully giving false information during an investigation," a violation of the ordinance involves "deceptive conduct that results in an impairment of governmental functions" and is therefore "inherently morally turpitudinous." Turning to the first step of a three-step CIMT framework set forth by the Attorney General in *Matter of Silva-Trevino* (*Silva-Trevino I*), 24 I&N Dec. 687 (A.G. 2008), the immigration judge further concluded "there is no reasonable probability in which a violation of [DMC § 38-40] could criminalize non-morally turpitudinous conduct." For these reasons, the immigration judge denied Mr. Flores-Molina's application for cancellation of removal.

Mr. Flores-Molina timely appealed to the Board of Immigration Appeals ("BIA"), arguing the immigration judge erred in finding he had been convicted of a CIMT because DMC § 38-40 does not contain "an express or inherent intent to [de]fraud, deceive, or obstruct justice." While the appeal was pending, the Attorney General vacated *Silva-Trevino I. See Matter of Silva-Trevino*, 26 I&N Dec. 550, 553 (A.G. 2015).

On February 29, 2016, the BIA dismissed Mr. Flores-Molina's appeal in a decision issued by a single Board Member. The BIA first acknowledged that the immigration judge relied in part on *Silva-Trevino I* and that the Attorney General had since vacated that decision. But the BIA noted that, in doing so, "the Attorney General specifically stated that he does not intend to affect the [BIA]'s determinations as to whether or not an offense entails 'reprehensible conduct committed with some degree of scienter,' and is or is not a crime involving moral turpitude for that reason." The BIA thus

4

concluded that the vacatur of *Silva-Trevino I* did not affect the immigration judge's decision because her decision was based on "well-established [BIA] precedent decisions relating to whether these types of offenses involve the necessary reprehensible conduct and degree of scienter to constitute crimes involving moral turpitude."

The BIA then determined there was no basis for disturbing the immigration judge's decision on the merits. In its brief substantive discussion, the agency explained that it has "consistently found that an offense that involves impairing or obstructing a function of the Government by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude." Rejecting Mr. Flores-Molina's argument that DMC § 38-40 lacks a sufficient intent element, the BIA stated that it has held "intent may be implied where, as here, the statute of conviction does not explicitly include intent as an element but where such intent is implicit in the nature of the offense." The BIA found that "knowingly and willfully" providing false information satisfies the requisite intent and thus concluded DMC § 38-40 is categorically a CIMT. Mr. Flores-Molina appeals.

## II. DISCUSSION

The sole issue in this appeal is whether the BIA properly concluded DMC § 38-40 is a "crime involving moral turpitude" within the meaning of the Immigration and Nationality Act ("INA"). If it is a CIMT, Mr. Flores-Molina's conviction precludes him from seeking cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1); *Garcia v. Holder*, 584 F.3d 1288, 1289 (10th Cir. 2009) ("An alien convicted of a CIMT is . . . not eligible for cancellation of removal . . . ."). If it is not, he may be able to seek cancellation, depending

5

on whether he can satisfy the other statutory prerequisites on remand. *See* 8 U.S.C. § 1229b(b)(1).[2]

We begin our discussion by addressing the applicable scope and standard of review, as well as the general legal principles relevant to this case. We then turn to the parties' arguments concerning DMC § 38-40 and consider whether the ordinance is categorically a CIMT. For the reasons set forth below, we conclude it is not.

### A. *Scope and Standard of Review*

"Our scope of review directly correlates to the form of the BIA decision." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (citation omitted). Here, because a single member of the BIA decided Mr. Flores-Molina's appeal and issued a brief opinion pursuant to 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the agency's final order of removal. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006); *see also Morones-Quinones v. Holder*, 591 F. App'x 660, 661–62 (10th Cir. 2014) (unpublished). Although we usually lack jurisdiction to review BIA orders concerning cancellation under § 1229b, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we have jurisdiction to review questions of law decided in those orders, *id.* § 1252(a)(2)(D); *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011).

Whether a cancellation-of-removal applicant's crime of conviction constitutes a CIMT is a question of law, and we review the BIA's legal conclusions de novo.

---

[2] In addition to showing no CIMT convictions, a noncitizen who wishes to apply for cancellation of removal must show he or she has been present in the United States for a continuous period of at least ten years, he or she has exhibited "good moral character" during that time, and his or her removal would result in "exceptional and extremely unusual hardship" to a qualifying relative. *See* 8 U.S.C. § 1229b(b)(1)(A)–(B), (D).

6

*Rodriguez-Heredia*, 639 F.3d at 1267. We do not defer to the BIA's interpretation of the substance of the state or local offense at issue, as that task has not been specifically delegated to the BIA and does not fall within its special expertise. *See Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011). However, because determining whether a given offense is a CIMT for purposes of the INA requires interpreting that statutory phrase, we may owe deference to the BIA's decision under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

"Under *Chevron*, we defer to an agency's interpretation of a statute that it is responsible to implement if (1) the statute is ambiguous or silent as to the issue at hand and (2) the agency's interpretation is neither arbitrary, capricious, nor manifestly contrary to the statute." *Carpio v. Holder*, 592 F.3d 1091, 1096 (10th Cir. 2010) (alteration and internal quotation marks omitted). Because the BIA is charged with administering the INA, *Rangel-Perez v. Lynch*, 816 F.3d 591, 597 (10th Cir. 2016), "the BIA's interpretations of ambiguous provisions in the [INA] are entitled to [*Chevron*] deference" when otherwise warranted, *see Rivera-Barrientos*, 666 F.3d at 645. The INA does not define "crime involving moral turpitude," and we have characterized it as "perhaps the quintessential example of an ambiguous phrase." *De Leon v. Lynch*, 808 F.3d 1224, 1228 (10th Cir. 2015) (quoting *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc)). Thus, if we conclude de novo that the BIA has properly construed the underlying offense at issue, we will defer to the BIA's interpretation of the statutory term CIMT as embracing the offense, as long as that interpretation is reasonable. *See Efagene*, 642 F.3d at 921; *Marmolejo-Campos*, 558 F.3d at 911.

But not every BIA decision interpreting the INA qualifies for deference. *Efagene*, 642 F.3d at 920. "[T]his court need only defer to the BIA's interpretation of the INA when the BIA acts in its lawmaking capacity and, in the case of the BIA's adjudications, that means only when the BIA's decision is binding precedent within the agency." *Rangel-Perez*, 816 F.3d at 597. A decision made by a single board member, like the decision here, is not precedential within the agency and therefore ordinarily is not entitled to deference. *See Efagene*, 642 F.3d at 920. Nonetheless, *Chevron* deference may extend to such a decision if it is based on a prior precedential BIA decision "addressing the *same* question." *Rangel-Perez,* 816 F.3d at 597 (citation omitted). Here, for reasons described below, we conclude that to the extent the government argues for *Chevron* deference, the BIA's decision is not entitled to it because the cases on which the BIA relied do not address offenses sufficiently comparable to DMC § 38-40.

Where *Chevron* deference is not appropriate, we consider whether the BIA's decision has "the power to persuade" and is therefore entitled to *Skidmore* deference. *Carpio*, 592 F.3d at 1098 (discussing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). In making this determination, we consider "the degree of the [BIA]'s care[;] its consistency, formality, and relative expertness[;] and . . . the persuasiveness of [its] position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (footnotes omitted); *see also Carpio*, 592 F.3d at 1098 ("We examine 'the thoroughness evident in the BIA's consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements.'" (alterations omitted) (quoting *Skidmore*, 323 U.S. at 140)). We also decline to extend

*Skidmore* deference in this case because the BIA's decision lacks "the power to persuade."

## B. *Legal Principles*

The process by which we determine whether a noncitizen's offense of conviction constitutes a CIMT is called the "categorical approach." *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). "The categorical approach . . . requires ignoring a petitioner's actual conduct and examining only the minimum conduct needed for a conviction under the relevant state [or local] law." *Ibarra v. Holder*, 736 F.3d 903, 907 (10th Cir. 2013). Thus, to determine whether a state or local offense is "categorically" a CIMT, we compare the statutory definition of that offense with the generic definition of CIMT and consider whether the minimum conduct that would satisfy the former would necessarily also satisfy the latter. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013); *Rodriguez-Heredia*, 639 F.3d at 1267; *see also Perez v. Lynch*, 630 F. App'x 870, 872 (10th Cir. 2015) (unpublished) (applying the categorical approach to determine whether a different provision of the Denver Municipal Code was a CIMT). "If every conviction under a given state statute [or city ordinance] involves moral turpitude, then the . . . conviction is categorically a CIMT." *Veloz-Luvevano v. Lynch*, 799 F.3d 1308, 1313 (10th Cir. 2015) (alterations and citation omitted); *see also Moncrieffe*, 133 S. Ct. at 1684 ("[A] state offense is a categorical match with a generic federal offense only if a

conviction of the state offense necessarily involved facts equating to the generic federal offense." (alterations and internal quotation marks omitted)).[3]

As noted above, the INA does not provide a generic definition of "crime involving moral turpitude." Rather, "its contours have been shaped through interpretation and application by the Attorney General, the [BIA], and federal courts." *De Leon v. Lynch*, 808 F.3d 1224, 1228 (10th Cir. 2015). Generally speaking, "[m]oral turpitude refers 'to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality.'" *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997) (quoting *Matter of Flores*, 17 I&N Dec. 225, 227 (B.I.A. 1980)). "Moral turpitude reaches conduct that is inherently wrong, or *malum in se*, rather than conduct deemed wrong only because of a statutory proscription, *malum prohibitum*." *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011). "[F]or an offense to involve moral turpitude, it must require a reprehensible or despicable act" and "necessarily involve[] an evil intent or maliciousness in carrying out th[at] reprehensible act." *Id.* at 921–22. Or, in the formulation referenced by the BIA here, an offense qualifies as a CIMT if it entails both "reprehensible conduct and some

---

[3] Where the underlying offense contains multiple alternative elements, rather than "various factual means of committing a single element," we sometimes apply a "modified categorical approach" to determine which elements formed the basis of the petitioner's conviction. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *Rangel-Perez v. Lynch*, 816 F.3d 591, 596 n.2 (10th Cir. 2016); *see also Descamps v. United States*, 133 S. Ct. 2276, 2284–85 (2013) (discussing substance of the modified categorical approach). Here, neither the immigration judge nor the BIA applied the modified categorical approach, and both parties maintain it has no relevance in this case. We therefore "have no occasion to consider whether we should instead apply [it]." *Rangel-Perez*, 816 F.3d at 596 n.2.

10

form of scienter." *See Matter of Silva-Trevino*, 26 I&N Dec. 550, 553 n.3 (A.G. 2015)
(citation omitted).

Alongside these "very general[]" translations, *see De Leon*, 808 F.3d at 1228, the
BIA and courts have espoused what might be characterized as subsidiary definitions and
rules applicable to narrower classes of conduct. One well-established rule, for instance, is
that "[c]rimes in which fraud is an ingredient are regarded as involving moral turpitude."
*Veloz-Luvevano*, 799 F.3d at 1313 (alterations and citation omitted); *see also Arias v.
Lynch*, 834 F.3d 823, 827 (7th Cir. 2016) ("Despite the confusion about how to determine
what moral turpitude is, there is a consensus that fraud is close to the core of moral
turpitude."). In several decisions, the BIA has found an offense implicitly fraudulent—
and thus, a CIMT—where it involved "impair[ing] or obstruct[ing] an important function
of a department of the government by defeating its efficiency or destroying the value of
its lawful operations by deceit, graft, trickery, or dishonest means." *E.g.*, *Matter of
Flores*, 17 I&N Dec. at 229.

## C.  *Application*

Here, the BIA relied on this latter interpretation in deeming DMC § 38-40 a
CIMT. Section 38-40 provides:

> It shall be unlawful for any person knowingly and willfully to give false
> information to an officer or employee of the city when such officer or
> employee is acting in their official capacity, concerning the identity of any
> person participating in, connected with, or responsible for, or concerning
> the manner of the commission of, any act, when, as part of their official
> duties or employment, such officer or employee is investigating:
>
> > (1) The legality of such act; or

(2) The identity of the person participating in, connected with, or responsible for the commission of such act.

Construing this language, and drawing from *Matter of Jurado-Delgado*, 24 I&N Dec. 29 (B.I.A. 2006), the immigration judge found that DMC § 38-40 is a CIMT because it "involves inherently deceptive conduct in that it involves knowingly and willfully giving false information to a police officer as he is conducting an investigation and this . . . results in an impairment of governmental functions." The immigration judge also cited *Matter of Kochlani*, 24 I&N Dec. 128 (B.I.A. 2007), as support for the proposition that "moral turpitude adheres in crimes that involve inherently deceptive conduct and result in the impairment of government functions . . . whether or not there is a specific intent to defraud as an element of the crime."

Agreeing with the immigration judge's conclusion, the BIA stated "we have consistently found that an offense that involves impairing or obstructing a function of the Government by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude." The agency followed this statement with citations to three of its precedential decisions: *Matter of Pinzon*, 26 I&N Dec. 189, 194 (B.I.A. 2013); *Matter of Jurado-Delgado*, 24 I&N Dec. at 35; and *Matter of Flores*, 17 I&N Dec. 225, 230 (B.I.A. 1980). As to intent, the BIA invoked *Matter of Khourn*, 21 I&N Dec. 1041, 1047 (B.I.A. 1997), rather than *Matter of Kochlani*, for the notion that "intent may be implied where, as here, the statute of conviction does not explicitly include intent as an element but where such intent is implicit in the nature of the offense." The BIA equated "intent" with

12

"mens rea," finding in DMC § 38-40 "the required intent, or mens rea, in the requirement that he 'knowingly and willfully' provide false information."

On appeal, Mr. Flores-Molina contends the BIA erred in deeming DMC § 38-40 a CIMT because the ordinance contains no explicit or inherent element of "intent to defraud, deceive, or to defeat a government department's efficiency or destroy the value of its lawful operations." He maintains that, under the decisions on which the BIA relied here, a law criminalizing false statements must include such an element in order to qualify as a CIMT. Mere dishonesty, he argues, is not sufficient.[4]

We agree. As we now explain, none of the precedential decisions cited in the BIA's opinion supports the conclusion that a false-statements offense qualifies as a CIMT in the absence of inherent fraud or a specific-intent element. We begin by analyzing these decisions and explaining that they conform to an overarching typology in fraud- and deceit-related CIMT cases. We then analyze DMC § 38-40 in light of these cases, and other applicable CIMT precedent, and conclude that it is not categorically a CIMT.

---

[4] Mr. Flores-Molina also makes two other arguments related to inherent intent. He first contends that, despite earlier BIA decisions to the contrary, it is no longer permissible to find an implicit element of intent under the categorical approach after the Supreme Court's decisions in *Descamps* and *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). He also argues that DMC § 38-40 cannot contain an inherent element of intent to defraud, deceive, or defeat a government department's efficiency or destroy the value of its lawful operations because the ordinance is part of a series of regulatory offenses. Because we conclude that, even under pre-*Descamps* and *Moncrieffe* decisions and without regard to its potential regulatory character, DMC § 38-40 does not contain an implicit element of intent sufficient to render it a CIMT, we need not address these arguments.

13

### 1. The BIA's Precedential Decisions & CIMTs Involving Fraud or Deception

The starting point for our evaluation of DMC § 38-40 is the precedential decisions on which the BIA here relied. Our review of these decisions reveals a helpful framework for deciding whether an offense is a CIMT. As we now explain, the BIA has identified three categories of deceit-related offenses that qualify as CIMTs: (1) offenses containing an explicit fraudulent intent element; (2) offenses containing an inherent fraudulent intent element; and (3) offenses containing a specific intent element.

We begin with *Matter of Flores* because that early decision informs the more recent ones. The noncitizen in *Matter of Flores* had been convicted under a federal statute that criminalized conspiring to commit an offense against the United States. 17 I&N Dec. at 227. The separate federal offense that was the object of this conspiracy prohibited "uttering or selling false or counterfeit paper relating to registry of aliens with knowledge of their counterfeit nature." *Id.* at 230 (paraphrasing the statute). The BIA was tasked with deciding whether either or both of these offenses qualified as a CIMT.

After listing the boilerplate definitions of CIMT, *id.* at 227–28, the BIA honed-in on the specific principle that "crimes in which fraud [i]s an ingredient have always been regarded as involving moral turpitude." *Id.* at 228 (quoting *Jordan v. De George*, 341 U.S. 223, 232 (1951)). The agency looked first to the conspiracy statute and concluded: "Intent to defraud the United States is not required for conviction. Since the element of fraud is not inherent in that part of the statute violated, it does not involve moral turpitude." *Matter of Flores*, 17 I&N Dec. at 228. Noting that a conspiracy to commit an

14

offense will itself involve moral turpitude when the underlying offense does, the BIA

then shifted its focus to the counterfeit-documents statute.

Although the BIA acknowledged that "intent to defraud the government" was not

an explicit element of that statute, it noted that its, and courts', prior decisions instructed

that such a statute still could constitute a CIMT "where fraud is inherent in [the] offense"

or, stated differently, "where fraud is so inextricably woven into the statute as to clearly

be an ingredient of the crime." *Id.* The BIA then engaged in the analysis it found relevant

in this case:

> In cases where fraud of the government has been charged, we have held
> that the government need not have been cheated out of money or property
> in order for the crime to involve moral turpitude. *It is enough to impair or
> obstruct an important function of . . . the government by defeating its
> efficiency or destroying the value of its lawful operations by deceit, graft,
> trickery, or dishonest means*. Clearly, the sale of counterfeit documents
> relating to alien registry impairs the lawful procedures of the [government]
> and thwarts its purpose of [properly documenting aliens entering] the
> United States. The question remains whether such an act constitutes a fraud
> against the government.

*Id.* at 229 (emphasis added) (citations omitted). Turning to this remaining question, the

BIA drew comparisons to prior decisions in which crimes were found to be inherently

fraudulent—and hence, CIMTs—because they involved knowing or intentional deceptive

conduct aimed at depriving the government of an entitlement or obtaining a benefit from

the government. *See id.* (discussing, for example, "knowingly making false

representations in order to evade [mandatory] military service" and "knowingly making

false statements with the intent to unlawfully obtain issuance of a passport"). The agency

also considered the "[m]ore closely analogous" category of counterfeiting crimes, noting

15

that such crimes had been found to "inherently contain the element of intent to defraud." *Id.* at 229–30. Consistent with these decisions, the BIA concluded that the crime of knowingly creating or selling counterfeit registration documents "inherently involves a deliberate deception of the government and an impairment of its lawful functions. *Thus, fraudulent conduct is implicit in the statute . . .* [and] therefore . . . a violation of [the statute] is a [CIMT]." *Id.* at 230 (emphasis added).

As this discussion makes clear, *Matter of Flores*'s "impair or obstruct the government by deceit" standard was espoused in that decision as a proxy for fraud. The BIA determined, in other words, that a person could not commit the crime of knowingly creating or selling counterfeit immigration documents without also perpetrating a fraud against the government, since that conduct necessarily sought to unlawfully appropriate the government's exclusive right to oversee alien registration and necessarily impaired its parallel procedures for issuing legitimate registration documents. Because a person could not commit the offense without perpetrating a fraud, it was not necessary that the prosecution show a specific intent to achieve that effect.

*Matter of Jurado-Delgado* and *Matter of Pinzon*—both of which applied the relevant language from *Matter of Flores* to statutes criminalizing false statements— essentially represent the flipside of the *Matter of Flores* coin. The noncitizen in *Matter of Jurado-Delgado* had been convicted under a Pennsylvania statute which provided in part: "A person commits a misdemeanor of the second degree if, *with intent to mislead a public servant in performing his official function*, he . . . makes any written false statement which he does not believe to be true . . . [or] submits or invites reliance on any

16

writing which he knows to be forged, altered or otherwise lacking in authenticity."

*Matter of Jurado-Delgado*, 24 I&N Dec. at 34 (emphasis added) (quoting 18 Pa. Cons.

Stat. § 4904(a) (1992)). The BIA concluded this offense constituted a CIMT, reasoning

that:

> To obtain a conviction under the Pennsylvania statute, it must be proved that the actor has the "intent to mislead a public servant in performing his official function" through the use of a false written statement or other writing that he or she believes or knows is not true. 18 Pa. Cons. Stat. § 4904(a). *Thus*, the perpetrator must make misleading statements *with an intention to disrupt the performance of a public servant's official duties*. We have held that impairing and obstructing a function of a department of government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means is a [CIMT]. *See Matter of Flores*, 17 I&N Dec. 225, 229 (B.I.A. 1980)[.]

*Id.* at 34–35 (emphases added). The agency further determined that the explicit element

of intent overrode the facts that the false statements need not have been material or made

under oath. *See id.*

The reasoning in *Matter of Pinzon* follows a similar course, despite differences in

the language of the statute at issue. There, the noncitizen had been convicted under 18

U.S.C. § 1001(a)(2), which penalizes "whoever, in any matter within the jurisdiction of

the executive, legislative, or judicial branch of the Government of the United States,

knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement

or representation." *Matter of Pinzon*, 26 I&N Dec. at 192 (quoting 18 U.S.C.

§ 1001(a)(2)). The noncitizen argued this offense was not categorically a CIMT because

the minimum conduct required for conviction was making a false statement. *Id.*

17

According to her, unlike making a fraudulent statement, making a false statement did not involve moral turpitude because it does not require an "evil intent." *Id.* at 192–93.

In rejecting this argument, the BIA relied not on the language of the statute but on contemporaneous precedent from the United States Court of Appeals for the Eleventh Circuit, "in whose jurisdiction th[at] case ar[ose]." *Id.* at 193. The Eleventh Circuit had explicitly held that "proof of a *specific intent to deceive* . . . is a *prerequisite for a conviction* under § 1001." *Id.* (emphases added) (citing *United States v. House*, 684 F.3d 1173, 1203 (11th Cir. 2012)). And, in construing the "materiality" element of § 1001(a)(2), the Eleventh Circuit had held that for a false statement to be "material" under that provision it must "have the capacity to impair or pervert the functioning of a government agency." *Id.* (quoting *United States v. Boffil-Rivera*, 607 F.3d 736, 741 (11th Cir. 2010)). Thus, relying on these twin holdings, the BIA concluded that "[t]o obtain a conviction [under § 1001(a)(2)], the Government was required to show that [the noncitizen] made a false statement that had the capacity to impair or pervert the functioning of a government agency and that the statement was made with the intent to deceive or mislead." *Id.* This definition of the offense aligned with the notion from *Matter of Flores* that "an offense that involves impairing or obstructing a function of the government by deceit, graft, trickery, or dishonest means is a [CIMT]." *Id.* at 194.

In sum, while fraud may not have been an automatic consequence of the conduct proscribed under the offenses in *Matter of Jurado-Delgado* or *Matter of Pinzon*, both offenses required that the perpetrator intended to achieve what *Matter of Flores* identified as a fraudulent result—namely, impairing or obstructing an important government

18

function by deceit. In *Matter of Flores*, fraud was a necessary incident of the crime, so the explicit element of intent was deemed unnecessary; in *Matter of Jurado-Delgado* and *Matter of Pinzon*, fraud may not have been an inescapable byproduct of the crimes, but the explicit element of intent was there.

These BIA decisions are consistent with a broader pattern visible in CIMT cases dealing with the concepts of fraud and/or deception. As always, offenses that explicitly include "fraudulent intent" (or some variation thereof) as an element are CIMTs by definition. *See, e.g.*, *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267–69 (10th Cir. 2011) (addressing identity-fraud statute that required "knowingly or intentionally us[ing], or attempt[ing] to use, [another person's identifying] information *with fraudulent intent*" (quoting Utah Code Ann. § 76-6-1102)).

Then, there are offenses that neither explicitly involve fraud nor contain a specific-intent element, but that nonetheless are deemed fraudulent (and thus, CIMTs) because their commission necessarily involves deception and necessarily causes harm to the government or to society, another person, or some other entity. *Matter of Flores* involved such an offense, and so did our decisions in *Veloz-Luvevano v. Lynch*, 799 F.3d 1308,

1313–14 (10th Cir. 2015),[5] and *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997).[6] *See also, e.g.*, *Matter of Kochlani*, 24 I&N Dec. at 130–31.

And last, there are offenses that do not explicitly involve fraud but that are deemed CIMTs because they involve deception and a specific intent to harm or obtain a benefit at the government's or another person's expense, thus tracking the common definition of fraud. *See Fraud*, Black's Law Dictionary (10th ed. 2014) (defining fraud as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment"); *accord Veloz-Luvevano*, 799 F.3d at 1313 (employing nearly identical definition). *Matter of Jurado-Delgado* and *Matter of Pinzon* involved offenses that fall within this category, as did our recent unpublished decisions in *Morones-Quinones v. Holder*, 591 F. App'x 660, 663–64 (10th Cir. 2014) (unpublished), and *Beltran-Rubio v. Holder*, 565 F. App'x 704, 707–08 (10th Cir. 2014) (unpublished).[7] *See also, e.g.*, *Matter of Correa-Garces*, 20 I&N Dec. 451, 454 (B.I.A. 1992).

---

[5] *Veloz-Luvevano v. Lynch* involved a Colorado criminal impersonation statute that required "knowingly assum[ing] a false or fictitious identity or capacity" and committing an act in that identity or capacity "which if done by the person falsely impersonated, might subject such person to [civil or criminal liability]." 799 F.3d 1308, 1313 (10th Cir. 2015) (quoting Colo. Rev. Stat. § 18-5-113(1)(d)). We concluded this offense "constitutes a categorical CIMT because fraud is inherent in the statute." *Id.*

[6] *Wittgenstein v. INS* involved a New Mexico tax-evasion statute that required "willfully attempt[ing] to evade or defeat any tax or the payment thereof." 124 F.3d 1244, 1246 (10th Cir. 1997) (alteration in original) (quoting N.M. Stat. Ann. § 7-1-72). We determined "that fraud is an essential part of th[is] crime." *Id.*

[7] Both *Morones-Quinones* and *Beltran-Rubio* addressed predicate convictions under the same provision of the Colorado criminal-impersonation statute, which at the time of the convictions provided: "A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity and in such identity or capacity he . . . [d]oes any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another." *Morones-Quinones v. Holder*, 591 F. App'x 660,

## 2. DMC § 38-40 Is Not a CIMT

DMC § 38-40 does not fit within any of these categories; it is distinguishable from the offenses in *Matter of Flores*, *Matter of Jurado-Delgado*, and *Matter of Pinzon* on multiple grounds. To run afoul of DMC § 38-40, a person must "knowingly and willfully . . . give false information to an officer or employee of the city . . . acting in their official capacity," the information must "concern[] the identity of any person participating in, connected with, or responsible for, or concern[] the manner of the commission of, any act," and the city official must be investigating the identity of that person or the legality of that act as part of her job. DMC § 38-40.

Obviously, fraud is not an explicit element of this offense, and neither party argues it is. Nor is fraud "so inextricably woven into" DMC § 38-40 as to bring it within the fold of offenses that are deemed to include an implicit element of fraudulent intent because their commission necessarily entails fraud. *See Matter of Flores*, 17 I&N Dec. at 228–30. The government several times makes the conclusory assertion that because DMC § 38-40 involves knowingly and willfully providing false information during an investigation, it falls within *Matter of Flores*'s description of a CIMT as an offense that "inherently involves a deliberate deception of the government and an impairment of its lawful

_____

661 (10th Cir. 2014) (unpublished) (quoting Colo. Rev. Stat. § 18-5-113(1)(e)); *Beltran-Rubio v. Holder*, 565 F. App'x 704, 707 (10th Cir. 2014) (unpublished). As the *Beltran-Rubio* panel explained, the first "clause requires the 'knowing[] assum[ption of] a false or fictitious identity or capacity,' Colo. Rev. Stat. § 18-5-113(1)(e)—or, stated succinctly, deceit. And when that deceit is used with any of the intended goals in subclause (e)—whether to benefit, injure, or defraud—there is fraud, as that term is commonly understood." 565 F. App'x at 707 (alterations in original) (citing Black's Law Dictionary 731 (9th ed. 2009)). Thus, the offense is categorically a CIMT. *Id.*; *accord Morones-Quinones*, 591 F. App'x at 663–64.

21

functions." *See id.* at 230. But as we explained above, the BIA used that statement as a proxy for fraud, in evaluating an offense that necessarily involved fraud on the government—i.e., creating or selling counterfeit alien-registration documents with knowledge of their counterfeit nature. *See id.* at 229–30. To commit the act that the statute prohibited was to harm the government automatically. That is simply not the case with DMC § 38-40—a false statement may violate the ordinance even though, in reality, it does not impede the investigation at all and concerns information that ultimately proves trivial.

DMC § 38-40 likewise falls outside the category of CIMTs exhibited in *Matter of Pinzon* and *Matter of Jurado-Delgado*. There is no requirement under DMC § 38-40 that the false information be material—and for that reason "have the capacity to impair or pervert the functioning of [the city] government," *see Matter of Pinzon*, 26 I&N Dec. at 193 (internal quotation marks omitted)—or be given with the intent to mislead the city official, to disrupt the official's investigation, or to otherwise cause any harm or obtain any benefit, *cf. id.* at 193–94; *Matter of Jurado-Delgado*, 24 I&N Dec. at 34–35. In focusing on the fact that DMC § 38-40 and the offense addressed in *Matter of Pinzon*—18 U.S.C. § 1001—have similar mental-state requirements on their faces, the government ignores the fact that the BIA in *Matter of Pinzon* relied on § 1001-specific federal precedent imputing "proof of a *specific intent to deceive* . . . [as] a *prerequisite for a conviction* under § 1001," and holding that § 1001's materiality element required proof that the false statements could harm the government. *See Matter of Pinzon*, 26 I&N Dec. at 193 (emphases added). A conviction under DMC § 38-40 requires proof of neither.

22

And contrary to the BIA's reasoning below and the government's position here, *Matter of Khourn* does not support imputing into DMC § 38-40 the element of intent present in *Matter of Pinzon* and *Matter of Jurado-Delgado*. The noncitizen in *Matter of Khourn* had been convicted under a federal drug statute that made it "unlawful for any person knowingly or intentionally . . . [to] distribute . . . or possess with intent to . . . distribute . . . a controlled substance." *See* 21 I&N Dec. 1041, 1044 (B.I.A. 1997) (quoting 21 U.S.C. § 841(a)(1)). The BIA noted, under a heading entitled "Mental State," that this offense required "a mental state of knowledge or intent" and that "knowledge or intent has been deemed essential for a finding of moral turpitude." *Id.* at 1046. Then, under a new heading entitled "Evil Intent," the BIA confronted the fact that its prior decisions have "held that 'evil intent' is a requisite element for a [CIMT]." *Id.* Noting that courts have long found "evil intent . . . to be inherent in the sale and distribution of controlled substances," that "Congress has . . . recognized the evils involved in drug trafficking," and that courts have consistently found drug-trafficking crimes to be CIMTs, *id.* at 1046–47, the BIA concluded that "evil intent" was inherent in a distribution conviction under the statute there and that the noncitizen therefore had been convicted of a CIMT, *id.* at 1047.

But an analysis of the requisite mental state for a narcotics-distribution offense tells us nothing about the requisite mental state for a false-statements offense. *See De Leon v. Lynch*, 808 F.3d 1224, 1229 (10th Cir. 2015) (rejecting argument for a mental-state element derived from CIMT cases involving larceny, since such cases "do not shed light on the necessary scienter for the receipt or possession of stolen property to be

23

morally turpitudinous"). The point is not, as the government implies, that DMC § 38-40 contains *some* mens rea element or that the mens rea element it contains might be sufficient for a CIMT-finding in the context of another type of crime. *Cf. Matter of Torres-Varela*, 23 I&N Dec. 78, 84 (B.I.A. 2001) (noting that some "crimes involving acts of baseness or depravity," such as "murder, rape, robbery, [and] kidnaping," have been classified as CIMTs without an intent element). Rather, the point is that *Matter of Pinzon* and *Matter of Jurado-Delgado*, and the category of CIMT cases they exemplify, involve offenses that require proof of a specific intent, and DMC § 38-40 does not require such proof.[8] *Cf. Marmolejo-Campos v. Holder*, 558 F.3d 903, 924 (9th Cir. 2009) (en banc) (criticizing a BIA decision for "misleadingly conflat[ing] 'evil intent' with 'specific intent'").

Indeed, Colorado law confirms that DMC § 38-40 cannot be read to implicitly include the requisite intent. *See De Leon*, 808 F.3d at 1230–31 (consulting state law in interpreting petitioner's statute of conviction); *Veloz-Luvevano*, 799 F.3d at 1313–14 (same). First, as Mr. Flores-Molina points out, state law indicates that DMC § 38-40 is a *general intent* crime. Although the Denver Municipal Code does not define "knowingly"

---

[8] The BIA and the government cannot bridge this gap by characterizing Mr. Flores-Molina's lack-of-intent argument as a lack-of-mens-rea argument, equating "intent" and "mens rea," and then pointing to the fact that DMC § 38-40 includes a mens rea element as proof that it includes the requisite intent. "Intent" is but one example of a "mens rea"; the terms are not synonyms. *See Mens rea*, Black's Law Dictionary (10th ed. 2014) (defining mens rea as "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime"). The Ninth Circuit has repeatedly chastised the BIA for this brand of flawed reasoning. *See, e.g.*, *Marmolejo-Campos v. Holder*, 558 F.3d 903, 925 (9th Cir. 2009) (en banc); *Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005).

24

or "willfully," or specify which crimes are general intent and which are specific, the Colorado criminal code's joint definition of those terms provides that "[a]ll offenses defined in this code in which the mental culpability requirement is expressed as 'knowingly' or 'willfully' are declared to be general intent crimes." Colo. Rev. Stat. § 18-1-501(6).[9] And the Colorado Supreme Court has applied this statute in interpreting a municipal-code provision with a "knowingly" mental state, when the code did not itself define "knowingly." *See City of Englewood v. Hammes*, 671 P.2d 947, 952–53 (Colo. 1983). Moreover, the city included "intentionally" or "with intent" in numerous other ordinances codified in the same Chapter as § 38-40, thus indicating that it could have made § 38-40 a specific-intent crime but chose not to. *See* DMC §§ 38-51.7, -51.10(c), -87 to -88, -91, -93 to -93.1, -96 to -97, -125(a)–(b), -132(a)(1)a.–b., -146(d), -158(A)(7), -174(b)–(c).

Even more instructive, though, is Colorado caselaw construing Colorado Revised Statutes § 18-8-111, which prohibits "knowingly" reporting false information to authorities and which is expressly cross-referenced in DMC § 38-40. Particularly relevant are the distinctions Colorado courts have drawn between this § 38-40 analogue and Colorado Revised Statutes § 18-5-113(1)(e),[10] the statute this court deemed a CIMT in *Morones-Quinones*, 591 F. App'x at 663–64, and *Beltran-Rubio*, 565 F. App'x at 707–

---

[9] By contrast, the joint definition of "intentionally" or "with intent" in the same section of the state code provides that "[a]ll offenses in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are declared to be specific intent offenses." Colo. Rev. Stat. § 18-1-501(5).

[10] Section 18-5-113(1)(e) has been re-codified in materially the same language at Colorado Revised Statutes § 18-5-113(1)(b)(II).

08. In *People v. Johnson*, a defendant convicted of both criminal impersonation under § 18-5-113(1)(e) and false reporting under § 18-8-111, among other crimes, argued that both convictions were based on the same conduct and that the harsher criminal-impersonation conviction therefore violated his equal-protection rights. 30 P.3d 718, 722 (Colo. App. 2000). The Colorado Court of Appeals rejected this argument, finding that:

> Section 18-8-111 does not proscribe the same criminal conduct as that proscribed in the criminal impersonation statute. A conviction under § 18-8-111(1)(d) requires a showing that the [false] information was knowingly provided to law enforcement authorities but, in contrast to [§ 18-5-113(1)(e)], *does not require intent unlawfully to gain a benefit or to injure or defraud another*.

*Id.* at 723 (emphasis added). The court then *expressly rejected* the defendant's argument "that this distinction is irrelevant" because the same intent explicitly required under § 18-5-113 is "inherent in and inseparable from" the conduct proscribed under § 18-8-111. *Id.*

The Colorado Supreme Court later approved of this reasoning from *Johnson*, reaffirming that "the criminal impersonation statute 'requires the additional showing of intent to gain a benefit or injure or defraud,' whereas false reporting does not," and that "[t]he two statutes [therefore] contain different elements." *Alvarado v. People*, 132 P.3d 1205, 1209 (Colo. 2006) (citation omitted) (quoting *Johnson*, 30 P.3d at 721). Thus, unlike some related specific-intent crimes, "[f]alse reporting may involve providing information *without the intent to affect a police officer's decision*." *People v. Blue*, 253 P.3d 1273, 1278 n.1 (Colo. App. 2011) (emphasis added); *see also id.* at 1278 ("The crime of false reporting penalizes those who provide untruthful information to public officials, *regardless of an attempt to influence public officials*." (emphasis added)).

26

In short, DMC § 38-40 addresses different, less-culpable conduct than that addressed in the offenses analyzed by the precedential decisions on which the BIA here relied. As a result, we decline to apply *Chevron* deference to the BIA's decision. *See Rangel-Perez v. Lynch*, 816 F.3d 591, 597 (10th Cir. 2016) (explaining that we accord *Chevron* deference to "a nonprecedential BIA decision [only] if it relies on prior BIA precedent addressing the *same* question" (citation omitted)). And as the foregoing discussion signals, we also conclude the BIA's decision lacks the persuasiveness necessary for *Skidmore* deference. *See Carpio v. Holder*, 592 F.3d 1091, 1098 (10th Cir. 2010) ("The paramount consideration [for *Skidmore* purposes] is whether the BIA's decision has 'the power to persuade.'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))). The considerations relevant to the application of *Skidmore* deference include "the degree of the [BIA]'s care, its consistency, [its] formality, and . . . the persuasiveness of [its] position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (footnotes omitted). Here, the BIA devoted only two short paragraphs to its substantive analysis of the merits, relied solely on distinguishable or inapposite precedent, and decided the case in an unpublished opinion issued by a single Board Member. This despite the fact that the immigration judge twice noted—once at the hearing on Mr. Flores-Molina's application and again in her final decision—that there was no precedential BIA decision on point.

Finally, applying non-deferential de novo review, we reject the BIA's conclusion and hold that DMC § 38-40 is not categorically a CIMT. *See Efagene v. Holder*, 642 F.3d 918, 921–25, 921 n.1 (10th Cir. 2011) (applying categorical approach de novo after

27

determining neither *Chevron* nor *Skidmore* deference was appropriate). The minimum conduct proscribed by DMC § 38-40 is "knowingly and willfully" giving false information to a city official concerning any act or the identity of any person associated with that act, when the official is investigating the act's legality or the person's identity. *Cf. Rangel-Perez*, 816 F.3d at 607 (explaining that, under the categorical approach, courts discern "the minimum conduct proscribed by the state [or local] statute" and determine whether that conduct falls within the generic federal offense). As we have explained already, this minimum conduct falls outside the "impair or obstruct the government by deceit" articulation of "crime involving moral turpitude" that has been applied to fraud and fraud-like statutes. For a false statement to violate DMC § 38-40, it need not involve fraud, cause harm to the government or anyone else, obtain a benefit for the speaker, or be given with the intent to achieve any of these ends. *Cf. Blanco v. Mukasey*, 518 F.3d 714, 719 (9th Cir. 2008) ("One can act dishonestly without seeking to induce reliance.").

Nor does DMC § 38-40 qualify as a CIMT under the more general definitions of that phrase. For an offense to be a CIMT, the conduct it proscribes must be "inherently base, vile, or depraved," or be "reprehensible," or "necessarily involve[] an evil intent or maliciousness." *See Efagene*, 642 F.3d at 921–22. Even assuming a false statement covered by DMC § 38-40 is "deceptive," there is no requirement that the information be believable or have any effect on the official's investigation. Providing "false information" within the ambit of DMC § 38-40 need not be "depraved."

Take, for example, a situation in which an officer is investigating a suspect in a neighborhood in which the suspect is notorious, and asking residents if they know the

suspect. Residents who do "know" the suspect generally, but who have no relationship with him, do not know where he is or what he's done, and hold no other pertinent information, might answer the officer's question in the negative, perhaps out of fear that even the appearance of cooperation could put their families at risk of retribution. This behavior, if technically "deceptive," would not impede the officer's investigation and hardly could be described as blameworthy, let alone "reprehensible" or the like. *See Arias v. Lynch*, 834 F.3d 823, 829 (7th Cir. 2016) ("A rule that all crimes that involve any element of deception categorically involve moral turpitude would produce results at odds with the accepted definition of moral turpitude as conduct that is 'inherently base, vile or depraved.'"). Or, for similar reasons, a person might provide false information regarding basic facts that an officer already knows—such as when or where an act occurred; or the name, address, or physical description of a person-of-interest. Again, there is no meaningful impediment and no inherent depravity. *Cf. Bobadilla v. Holder*, 679 F.3d 1052, 1058 (8th Cir. 2012) (concluding false-statements offense that required "intent to obstruct justice" was not categorically a CIMT, and "reject[ing] the notion, all too prevalent in government circles, that every person who intentionally [let alone knowingly] makes a government official's task more difficult is guilty of 'inherently base, vile, or depraved' conduct").

And the ordinance reaches a broad range of conduct that does not necessarily concern criminal activity or a police investigation. A person violates DMC § 38-40 if she knowingly and willfully gives false information to an "employee of the city" concerning the identity of any person "connected with," or the manner of commission of, "any act,"

when such employee is investigating the "identity of the person participating in, connected with, or responsible for the commission of such act." Suppose an anonymous local church group renovates a local park by painting over graffiti, picking up trash, and planting flowers. The group neither seeks nor welcomes public reward or acknowledgment for this religious service activity. Nevertheless, the city hopes to encourage similar volunteer activities by identifying and publicly recognizing the group. As part of his official duties, a city employee contacts a number of civic organizations and churches in an attempt to identify the good Samaritans. When contacted, the minister for the church group knowingly and willfully denies having any information about the actors or their activities. This conduct, although not morally turpitudinous, violates DMC § 38-40.[11]

To be sure, as the government points out, the BIA, other federal circuit courts, and even panels of this court in unpublished decisions have at times made statements suggesting that deceptive conduct alone is enough for a finding of moral turpitude. *Accord Arias*, 834 F.3d at 828 ("We and other courts have sometimes used broader language, writing that any crime involving the larger concept of 'deception,' in contrast to the narrower concept of fraud, involves moral turpitude."). But a look beneath the surface of these decisions shows that they do not bear this proposition out. Rather, these decisions almost uniformly adhere to the fraud- and intent-based categories outlined above.

---

[11] Indeed, the government conceded at oral argument that it is possible to violate DMC § 38-40, without engaging in morally turpitudinous conduct.

30

In *Matter of Pinzon*, for example, the BIA cited to *Matter of Correa-Garces*, 20

I&N Dec. at 454, for the proposition that the BIA "ha[s] long held that crimes involving

fraud *or* making false statements involve moral turpitude." *Matter of Pinzon*, 26 I&N

Dec. at 193 (emphasis added). The BIA in *Matter of Correa-Garces*, in turn, had stated

that "[c]onvictions for making false statements have been found to involve moral

turpitude." 20 I&N Dec. at 454 (citing *Kabongo v. INS*, 837 F.2d 753 (6th Cir. 1988)).

But the noncitizen in that case had been convicted "for making false statements on an

application for a United States passport under another name; and for willfully,

knowingly, and with intent to deceive, falsely representing a social security account

number as having been issued to him, for purposes of obtaining a passport in that other

name." *Id.* Thus, in full accord with the decisions categorized above, the BIA concluded

"that the [noncitizen]'s conviction for making false statements, *in order to fraudulently*

*obtain a passport in another person's name*, is for a [CIMT]." *Id.* (emphasis added).[12]

The same distinction holds true in the various cases from our sister circuits that

include, or have been cited as authority for, similar statements. *See, e.g.*, *Rodriguez v.*

*Gonzales*, 451 F.3d 60, 63–64 (2d Cir. 2006) (crime of "willfully and knowingly

ma[king] any false statement in an application for passport *with intent to induce or secure*

---

[12] The one case *Matter of Correas-Garces* cited in support of the notion that "false statements have been found to involve moral turpitude"—*Kabongo v. INS*—is distinguishable for similar reasons: the noncitizen there was convicted of "making false statements *in order to obtain student financial aid*" from the federal government. *See Kabongo v. INS*, 837 F.2d 753, 754 (6th Cir. 1988) (emphasis added). Thus, the court concluded "the statements [were] made *to defraud the United States Government*" and accordingly found that the noncitizen had been convicted of a CIMT. *Id.* at 758 (emphasis added).

*the issuance of a passport*" was a CIMT (emphasis added)); *Padilla v. Gonzales*, 397 F.3d 1016, 1019–20 (7th Cir. 2005) (crime of "knowingly furnishing false information *with intent to prevent the apprehension or obstruct the prosecution or defense of any person*" was a CIMT (emphasis added) (internal quotation marks omitted)); *Omagah v. Ashcroft*, 288 F.3d 254, 261 (5th Cir. 2002) (deferring under *Chevron* to the "BIA's decision to classify, as [a CIMT], conspiracy to possess illegal immigration documents *with the intent to defraud the government*" (emphasis added)); *Zaitona v. INS*, 9 F.3d 432, 437–38 (6th Cir. 1993) (crime of knowingly making a material misrepresentation in an application to obtain a state license was a CIMT).

This court's arguable endorsements of such a "deception-only" standard appear in three unpublished opinions, all of which invoke the Seventh Circuit's decision in *Padilla*. *See Beltran-Rubio*, 565 F. App'x at 708; *Vaquero-Cordero v. Holder*, 498 F. App'x 760, 765 (10th Cir. 2012) (unpublished); *Castillo-Torres v. Holder*, 394 F. App'x 517, 521 (10th Cir. 2010) (unpublished). Of these cases, only *Castillo-Torres* warrants a closer look here.[13] Ultimately, it does not persuade us to change our conclusion that DMC § 38-40 is not categorically a CIMT.

In *Castillo-Torres*, a panel of this court reviewed a BIA decision rejecting a noncitizen's application for cancellation because, in the BIA's view, the noncitizen had twice been convicted of a CIMT. 394 F. App'x at 520–21. The convictions were for

---

[13] The relevant references in *Beltran-Rubio* and *Vaquero-Cordero* are largely dicta, and even if they were not, those cases are distinguishable for various reasons, including that the offenses they address contain specific-intent elements. *See Beltran-Rubio*, 565 F. App'x at 707–08; *Vaqueros-Cordero v. Holder*, 498 F. App'x 760, 763, 765 (10th Cir. 2012) (unpublished).

violating Utah Code Annotated § 76-8-507(2), which makes it unlawful for a person to give another person's identifying information to a peace officer "with the intent of leading [the] peace officer to believe that the person is another actual person," and Utah Code Annotated § 76-8-504.5(1), which prohibits making false statements in a preliminary hearing under caution of criminal liability, but does not contain a specific-intent element. On appeal, the noncitizen argued, based on the Ninth Circuit's decision in *Blanco v. Mukasey*, 518 F.3d at 718–20, that neither statute was a CIMT because neither required an intent to obtain anything tangible. *Castillo-Torres*, 394 F. App'x at 521.

In a brief analysis, the panel disagreed. It quoted *Padilla* for the proposition that "almost all courts have held that intentionally deceiving the government involves moral turpitude," *id.* (quoting *Padilla*, 397 F.3d at 1020), and then cited *Matter of Jurado-Delgado* for the "more important[]" proposition that "the BIA has held that making false statements to government authorities with an intent to mislead them is turpitudinous," *id.* (citing *Matter of Jurado-Delgado*, 24 I&N Dec. at 35). Thus, "[i]n light of the Seventh Circuit's decision in *Padilla*," the panel found the BIA's decision reasonable and deferred to the agency. *Id.*

There are several reasons why this non-precedential decision does not convince us that DMC § 38-40 is a CIMT.[14] First, although only one of the two Utah statutes contained a specific-intent element, it is clear from the panel's analysis that intent was central to its decision. *See id.* The panel did not restate the respective substance of each

---

[14] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

statute in its CIMT discussion, which is understandable since it appears the petitioner did not differentiate between the two statutes in her argument or assert that § 76-8-504.5(1) is not a CIMT because it lacks a specific intent. *See id.* Moreover, the case on which the panel relied—*Padilla*—has since been circumscribed and, in any event, does not support classifying DMC § 38-40 as a CIMT. As noted above, while *Padilla* speaks of a broader deception-only principle, its actual substance conforms with the category of offenses deemed CIMTs because, unlike DMC § 38-40, they involve deception and the specific intent to impair or obstruct (i.e., harm) a government function. *See Padilla*, 397 F.3d at 1019–20 (analyzing offense that criminalized making false statements with the specific intent of concealing criminal activity). And just last year, the Seventh Circuit explicitly recognized *Padilla*'s more limited reach:

> We and other courts have sometimes used broader language, writing that any crime involving the larger concept of "deception," in contrast to the narrower concept of fraud, involves moral turpitude. . . . In *Padilla*, in deciding that obstruction of justice was a [CIMT], we wrote: "Crimes that do not involve fraud, but that include dishonesty or lying as an essential element also tend to involve moral turpitude." 397 F.3d at 1020[.]

> But note the qualifier, "tend to." Despite the broad language, cases finding crimes of moral turpitude based on deception *rely on other aggravating factors, especially actual or intended harm to others. See . . . Padilla*, 397 F.3d at 1017–18[.]

*Arias*, 834 F.3d at 828 (emphasis added).

But even if *Padilla*'s wider pronouncements retain some validity after *Arias*, we would conclude *Padilla*'s operative reasoning counsels against classifying DMC § 38-40 as a CIMT for an additional reason. In rejecting the petitioner's argument that his crime

34

was not a CIMT because it was *malum prohibitum*,[15] the *Padilla* court relied on the fact

that the crime included a specific-intent element, noting that "[s]pecific intent is

inconsistent with a crime that is *malum prohibitum*." 397 F.3d at 1020. The obverse of

this reasoning, recognized by the BIA and federal courts with respect to other offenses, is

that *general*-intent crimes typically are *malum prohibitum*—that is, *not* CIMTs. *See, e.g.*,

*Alonzo v. Lynch*, 821 F.3d 951, 958 (8th Cir. 2016) ("Simple assault typically is a general

intent crime, and it is thus different in character from those offenses that [are classified as

CIMTs because they] involve 'a vicious motive, corrupt mind, or evil intent.'" (emphasis

omitted)); *Matter of Solon*, 24 I&N Dec. 239, 241 (B.I.A. 2007) (same). And as we

explained already, DMC § 38-40 is a general-intent crime.

In sum, none of these decisions cut against our conclusion that DMC § 38-40 is

not categorically a CIMT. We note, too, that this conclusion is supported by recent

decisions from several of our sister circuits. *See, e.g.*, *Rivera v. Lynch*, 816 F.3d 1064,

1075–76 (9th Cir. 2015) (perjury statute was not a CIMT because "intent to defraud is not

required for conviction under [the statute]; it requires only that the false statements have

been made 'deliberately and with knowledge'"); *Bobadilla*, 679 F.3d at 1058 (crime of

misrepresenting identity to police "with intent to obstruct justice" was not a CIMT

because it did "not require proof that the 'intent to obstruct justice' was successful, or that

it misled the police officer even for a moment"); *Blanco*, 518 F.3d at 718–19 (crime of

falsely representing identity to police "to evade the process of the court, or to evade . . .

---

[15] As a reminder, "[m]oral turpitude reaches conduct that is inherently wrong, or *malum in se*, rather than conduct deemed wrong only because of a statutory proscription, *malum prohibitum*." *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011).

proper identification . . . by the [police]" was not a CIMT because it "require[d] only the knowing provision of false information," rather than explicit or implicit intent to defraud, benefit, or harm); *cf. Arias*, 834 F.3d at 826–28; *Yeremin v. Holder*, 738 F.3d 708, 715–16 (6th Cir. 2013) (holding crime of knowingly possessing IDs with intent to use them unlawfully was a CIMT, and explaining that BIA decision which found a similar statute *not* to be a CIMT was consistent because that statute required only knowingly possessing altered IDs, without proof of intent to use them unlawfully).[16]

## III. CONCLUSION

We conclude the BIA erred in determining that Mr. Flores-Molina's crime of conviction, DMC § 38-40, is categorically a CIMT and that Mr. Flores-Molina is barred from seeking cancellation of removal for that reason. We therefore grant Mr. Flores-Molina's petition for review and remand to the BIA for further proceedings consistent with this opinion.

---

[16] The parties attempt to raise an additional issue that neither the BIA's decision nor the parties' appellate briefs addressed. Several days before oral argument the government filed a supplemental-authority letter pursuant to Federal Rule of Appellate Procedure 28(j) in which it argued that, for DMC § 38-40 *not* to be a CIMT, Mr. Flores-Molina must show a "realistic probability" that "the city of Denver would prosecute [Mr. Flores-Molina's] hypothetical person who 'knowingly and willfully' makes a false statement which was immaterial to the government's investigation." However, "[i]t is well established that we will not consider issues raised for the first time in a Rule 28(j) letter." *Thacker v. Workman*, 678 F.3d 820, 842 (10th Cir. 2012). This is so even where the authority cited in the letter was announced after briefing, let alone where, as here, the authority on which the government relies—our decision in *De Leon v. Lynch*, 808 F.3d 1224 (10th Cir. 2015)—was announced the prior year. *See Thacker*, 678 F.3d at 842. Accordingly, we do not address this issue.